## THOMAS v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted October 10, 1924. Decided November 3, 1924.)

No. 4163.

**Criminal law** ⬤═823(6) — **Charge on self-defense held not misleading.**

Charge on law of self-defense, stating that "a mere pretense of force would not justify a killing," *held* not erroneous, because misleading, in view of other portions of charge, removing all possible ambiguity as to court's meaning.

Appeal from the Supreme Court of the District of Columbia.

Ralph · Thomas was convicted of murder, and he appeals. Affirmed.

Abner Siegal, of Washington, D. C., for appellant.

Peyton Gordon and L. A. Rover, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a verdict and judgment in the Supreme Court of the District of Columbia, under which appellant was found guilty of murder and sentenced to suffer the death penalty.

According to the evidence for the government appellant and his wife had separated and on the occasion in question appellant met his wife at the home of her brother, where others were present. Appellant invited his wife to accompany him to his room. At first she refused, but later consented. He stated to her that he wished to give her $10 and a tablecloth. The party went by automobile to the house where appellant lived, and ·appellant and his wife entered the dwelling arm in arm; the wife stating to other members of the party that she would see them later. After a short time had elapsed, and the wife had not returned, one or more members of the party went to the house and inquired for her. Whereupon appellant said she was asleep, and a little later he came out of the house, and, encountering his wife's brother ·at the gate, repeated the remark that she was asleep. The brother and another witness, not being satisfied with the explanation, went into the house and found the bedclothes and pillows piled on top of what proved to be the body of the decedent, whose throat had been cut from ear to ear, and who appeared to be dead.

The same night appellant was arrested, and, according to the officer who made the arrest, said: "I have committed murder." According to appellant's testimony, when the officer approached him and said, "Hands up, Ralph," he struck appellant in the head with a black-jack. Whereupon appellant said: "What are you hitting me for? I haven't done nothing but murder." On the way to the station house, after the arrest, one of the officers, in response to an inquiry, expressed the opinion that the wife was not dead. According to the testimony of the officer, appellant then said: "If she is not, if you will let me go back to the house, I will finish her."

The next day appellant made a statement, which was reduced to writing, and which he signed. This statement was admitted in evidence without objection. Concerning the circumstances leading up to the visit of decedent to appellant's place of abode, the statement did not differ materially from the narrative already given. As to what occurred immediately preceding the killing, the confession is as follows: "Huggins [one of the parties in the automobile] was blowing his horn. I went to the window and told

him that she was not going, and she said that yes she was going. I told her [decedent] that 'No, she was not,' and she said, if she did not go, there was going to be hell, as 'I would kill you for him.' She then made some kind of a move. I then got up from the bed, and went to the dresser, and got my razor, came back to the bed, and sat down, and then she said, 'You have got that damn razor,' and I said, 'Yes.' She then grabbed me around the neck. I then opened the razor with my right hand, and put my left hand around her neck, and cut with my right hand, and then laid her across the bed. She raised up and grabbed me by my hands. I then pushed her back on the bed again. I got up and lit the lamp and changed my clothes, and then went down stairs and met her brother at the corner of the alley. He asked me if his sister was coming down. I told him that she was, and that I was going after a bottle of ginger ale."

The statement of appellant on the witness stand differed somewhat from his written confession, for in his testimony he said that, as he and his wife were sitting on the bed, she announced that she was going to kill him; that "then the deceased went down in her stocking," whereupon appellant got his razor, which was lying on the table, "and when I got the razor I laid the razor on the bed, and she said, 'Ralph,' she said, 'I am going to kill you,  * *. * ' and I turned around like that, and I turned back, and I says to her, 'Who is the drunkest, you or I?' And she said, 'We both.' * * * She says, 'Ralph,' she said, 'I am going to kill you,'  * *. * and she throwed her arm like that, and she caught my neck in a crook. * * * She caught my neck in a crook, and I tried in an effort to get away from her by trying to get the knife out of the other hand, and it was impossible for me after wrestling. I was out of wind, and I reached over, and I caught my knife, the razor, and I brought it up that way, and I don't know how I got that way, and when I went to push her off, why that is when her head went back."

No knife or weapon of any kind was found in the room, and, according to the evidence for the government, the appellant had not mentioned a knife prior to the trial.

It is apparent from the foregoing statement that the only issue at the trial was whether the killing was done in self-defense.

After defining the various degrees of murder, and directing the attention of the jury to the evidence, both for the government and the accused, the court said:

"Now, gentlemen, it is your duty to consider all of the evidence in the case, and therefrom ascertain and determine the issue of fact. * * * I advise you that you are the sole judges of the evidence in the case, and you will return your verdict, based solely upon the evidence and upon the applicable law as given to you by the court.

"Now the defense here is that of self-defense. The law of self-defense, as it is briefly described, means simply the right of an individual to protect himself in his life, his limbs, and his property from injury. And in the development of that doctrine the law has come to be that, if a man honestly and reasonably believes that he is in immediate danger of death or grievous bodily harm from another, he may stand his ground, and if he kills such other he has not exceeded the bounds of lawful self-defense.

"In other words, if a person is so circumstanced or so situated that he honestly believes, and has reasonable grounds for the belief, that he can save himself from death or serious bodily harm only by taking the life of an assailant, he has the right so to protect himself. As applied to the instant case, if you believe from all of the evidence that the defendant at the time of the occurrence was in such a situation that he honestly believed, and had reasonable grounds to believe, that he could save himself from serious bodily harm only by killing his wife, then he had the right to so.

"You must bear in mind, however, that to justify a killing under such circumstances the person so circumstanced must have an honest belief that such a situation was present; and in order to constitute an honest belief there would have to be reasonable grounds for the belief. In other words, a mere pretense of force would not justify a killing.

"Now, in conclusion, if you shall believe from the evidence that the defendant honestly believed at the time of the occurrence that he was in immediate danger of death or of grievous bodily harm from his wife, he had the right to stand his ground, as it is called, and if in so doing he killed her he would not have exceeded the bounds of lawful self-defense. In other words, if you believe from the evidence that the defendant was in such a situation that he honestly believed, and had reasonable grounds to believe, that he could save his life, or could save himself from serious bodily harm, only

by killing his wife, then, as I say, he had a right to do so."

While the exception to this charge was general, it now is contended that the statement by the court, "In other words, a mere pretense of force would not justify a killing," may have misled the jury. It is not questioned, however, that, aside from this statement, the charge constituted a substantial compliance with our ruling in Price v. United States, 51 App. D. C. 106, 276 F. 628. It will be observed that the court in the present case clearly and forcefully instructed the jury that they were to decide the case on the evidence. The court then said "that, if a man honestly and reasonably believes that he is in immediate danger of death or grievous bodily harm from another, he may stand his ground, and if he kills such other he has not exceeded the bounds of lawful self-defense." This was a correct abstract statement of the law, but the court further elucidated the statement, and then specifically said to the jury that, if they believed from all of the evidence that the defendant, at the time of the occurrence, was in such a situation that he honestly believed, and had reasonable grounds to believe, that he could save himself "from serious bodily harm only by killing his wife, then he had the right to do so." The court then indulged in an abstract statement of the fact that an honest belief must be founded upon reasonable grounds, adding the words to which appellant objects. Had that been the end of the charge, there might have been some merit in appellant's contention, although the court did not intimate that the acts of the decedent in the present case, as portrayed by the appellant, constituted "a mere pretense of force," and the language of the court, when considered in the light of the context, well may have referred to a pretense on the part of the accused. But the charge did not end with this abstract statement. On the contrary, all that the court had said concerning the law of self-defense was included in the recapitulation, and removed all possible ambiguity as to the court's meaning in the statement to which appellant objects. This recapitulation already has been given.

It is inconceivable that a jury of ordinary intelligence, after listening to this charge, could have failed to understand the law of self-defense, as applied to this case. It follows that the judgment must be affirmed.

Affirmed.