### NEWMAN v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1923.)

No. 2052.

1. **Criminal law ⬳369(2)—Unrelated crimes generally may not be made subject of inquiry.**

Other alleged crimes committed by defendant, not related to the offense for which he is on trial, cannot be made the subject of investigation on his cross-examination as a witness, save in cases where intent is a material ingredient of the offense charged, or the subject of inquiry is so related to such offense as to throw material light thereon, and even in the latter cases it will not be permitted, where to do so would prejudice the accused.

2. **Criminal law ⬳1169(5), 1170½(5)—Permitting cross-examination of defendant as to other assumed offenses, held prejudicial error.**

Defendant, a physician on trial for illegal sale of narcotic drugs, on his cross-examination as a witness was asked if he did not specialize in abortions, and if that and the vending of drugs did not constitute the greater part of his practice; also if he did not on two occasions named steal drugs from a drug store. On his positive denial in each instance, a witness was permitted to give testimony tending to support one of the charges of theft. *Held*, that permitting such cross-examination and the introduction of such testimony, though a part of it was afterwards stricken out by the court, was prejudicial and reversible error.

In Error to the District Court of the United States for the Northern District of West Virginia, at Elkins; William E. Baker, Judge.

Criminal prosecution by the United States against Felix R. Newman. Judgment of conviction, and defendant brings error. Reversed.

A. M. Cunningham, of Elkins, W. Va. (R. H. Allen, of Elkins, W. Va., on the brief), for plaintiff in error.

W. C. Grimes, Asst. U. S. Atty., of Keyser, W. Va. (T. A. Brown, U. S. Atty., of Parkersburg, W. Va., on the brief), for the United States.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge. The indictment in this case charged the plaintiff in error, a licensed physician practicing at Elkins, W. Va., with violating the Harrison Anti-Narcotic Drug Act (Comp. St. §§

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6287g–6287q). The offenses are stated in four counts: First, that the defendant knowingly and feloniously gave, distributed, dispensed, and furnished, on the 7th day of May, 1922, to one John Walter McDonald, a narcotic inspector, 16 one-quarter grains of morphine tablets, not in the course of his regular professional practice as such physician, and not in the treatment of any disease from which said McDonald was suffering, and not pursuant to a written order therefor issued for the purpose by the Commissioner of Internal Revenue; the second, that the defendant did, on or about the 5th of June, 1922, knowingly and feloniously give, distribute, dispense, and furnish to the said McDonald 12 one-quarter grains of morphine tablets, by means of a certain prescription, not in the course of his professional practice; the third count charged the same offense as that contained in the first count, except that the date in the third count is the 6th of June, 1922, and the quantity of morphine alleged to have been dispensed 6 grains; the fourth count is the same as the second, except the date of the offense is June 14th. The jury acquitted the defendant under the second and' fourth counts, and convicted him under the first and third counts.

There are but two questions involved in the case, viz.: Did the defendant, on or about the 7th of May, 1922, dispense, sell, or give away to J. W. McDonald, narcotic inspector, not in the regular course of his practice, 16 one-quarter grain morphine tablets, as alleged in count 1 and 6 one-quarter grain morphine tablets, on or about the 6th of June, as alleged in the third count of the indictment? The contention of the government, and on which it bases its claim to support the verdict, is stated by its counsel as to count 1, as follows:

"The evidence of the government differs very materially from that of the defendant. It appears from the evidence of John Walter McDonald, the government narcotic inspector, that he went to Elkins on or about the 3d day of May, 1922, to make an investigation of this case, calling at the office of the defendant on the same day that he reached said town. Said narcotic inspector told said defendant that he was an addict, and had been for about five years; that he used from one-half to a grain a day; that he asked defendant to supply him with some morphine and defendant said: 'Well, I am sorry, I cannot do anything for you to-day; I am on the square.' Defendant then got up to leave, but remained about one half hour on the invitation of the defendant. This was on Monday. On the following Saturday witness was walking along Randolph avenue and met defendant, who said: 'Hello there, how are you feeling to-day?' After witness had returned the salutation, defendant said: 'You look pretty well; have you been able to get anything?' Witness then told defendant that he had picked up a couple of capsules at the station, but if he couldn't get more he would have to leave town; that the defendant then asked witness to come to defendant's office on Sunday morning, which date was May 7th. Witness went to the office of defendant as requested, and, on being asked his name, gave his right name and address, but told defendant he could make the address Toledo, if he wanted to. Defendant in a subsequent prescription gave the address of witness as Elkins, W. Va. Witness further testified that defendant on this first occasion wrote a prescription for 12 tablets, one-fourth grain each, and handed to witness; then asked said witness if he (defendant) went after the drug himself, and on being told by witness that he had no objection, defendant took the prescription and tore it up. Witness stated he knew the prescription was for 12 tablets of morphine, one-fourth grain each, because he looked over the defendant's shoulder while he was writing it; that defendant charged him nothing for writing the prescription; that the defendant made no examina-

tion of the witness to ascertain whether he was suffering from any disease, and that witness had no order blank. The above is substantially the evidence of the government as to first count on which defendant was convicted."

And as to count 3, as follows:

"The witness McDonald testified that he again visited the defendant on June 3th, because defendant had promised to have some straight stuff, and that on this occasion he obtained some morphine sulphate, which in its original form comes in little blocks or cubes. The record does not make it clear how witness received this, whether by prescription, or whether it was delivered to him by Dr. Newman. Witness further testified that he was not suffering from any disease, nor had he any pain of any kind, and that no questions were asked him. This transaction is denied by the defendant. This is substantially all the evidence given touching count 3, on which defendant was found guilty."

The material testimony in the case was confined almost entirely to the evidence of the government inspector on the one hand, and the defendant on the other; the conflict between the two being sharp, but in many matters of importance they are practically in harmony. The government's counsel in their argument thus refer to the testimony:

"The evidence is very conflicting, consisting of assertions by the government witness McDonald, narcotic inspector, and denials by the defendant, the only two witnesses who have personal knowledge of the main facts. The chief and most important difference is as to whether the witness McDonald represented himself to be suffering from ulcers of the stomach and other maladies which caused him severe pain, and because of which he could not sleep at night, and whether the defendant made a physical examination in so far as he was able to do of said witness to ascertain whether he was malingering or not. These contradictions, however, apply wholly to counts 2 and 4, on which defendant was acquitted. The government concedes that this was a matter to be submitted to the jury."

The acceptance by the jury of the defendant's statement of the inspector's account of his ailments and suffering throws much light on the real truth and facts of the case, and the result as found by the jury cannot be brushed aside, because, as claimed, what was said applied only to the second and fourth counts. These particulars, as to what the inspector represented his condition to be, bear most materially on the motive and intent with which the defendant acted in everything he did. Moreover the fact that the inspector and defendant are in substantial accord as to the former's effort on his first visit to procure the drug from the defendant, and of the defendant's refusal to furnish the same, and that they do not differ substantially as to the occurrences and circumstances under which they met on the street several days or a week after the first meeting, is most material as throwing light on the action and motive of the defendant, as well as whose version should be accepted as true in the subsequent occurrences. The differences between the inspector and the accused are chiefly that the inspector says he claimed to be a drug addict, and was not suffering from any physical ailment, and no examination was made to ascertain his condition, while the defendant says the inspector represented himself to be a retired druggist from Washington, whose health had broken down, and who was on that account staying in the mountains near Elkins, and that he had been forced to use drugs on

account of an ulcerated stomach and other conditions, from which at times he was a great sufferer, necessitating the use of opiates to alleviate the pain; that he examined the inspector physically, and made tests necessary to enable him to judge of his condition, and did all that was possible to do to ascertain the presence of ulcers without the aid of an X-ray; and that, finding his condition neurasthenic, and to relieve the pain he was apparently suffering, he prescribed for him as a patient, and in the regular course of his practice only; that he gave him during his visits two prescriptions and a box of pills, making no charge therefor, as he was a druggist. The inspector claims he paid $2 for the prescriptions, and insists that the defendant twice gave him drugs, though he only charged for them once, the amount the defendant paid the druggist for the same.

The jury acquitted the defendant under the counts for giving the prescriptions, thereby accepting the defendant's statement over that of the inspector. The jury's verdict on the more important counts very materially bears upon the gravity of the case, in the light of the sentence of the court. We can but feel that acquitting the defendant on two counts, leaving involved one for furnishing the drug twice, in a quantity that would not exceed in value, according to the price paid the druggist for filling the prescriptions, of about $1, and the gift of one-half of which is conceded by the inspector, greatly operated to minimize the importance of the case.

Upon the return of the verdict, the defendant moved the court to set the same aside and grant him a new trial, which motion was overruled. Judgment was entered upon the verdict, and the defendant sentenced to pay a fine of $1,000, and the costs of the prosecution, and to imprisonment in the United States penitentiary at Atlanta, Ga., at hard labor, for the term of ten years (five years on each count). From that judgment this writ of error was sued out, and, no supersedeas being allowed, the defendant is, as he has been for some months past, serving his term in the penitentiary.

Many assignments of error are presented for our consideration, which need not be taken up in detail, as in the court's view, the case turns upon the action and ruling of the District Court on the efforts of the government's counsel to bring before the jury evidence of other offenses than those for which the defendant was being tried, and which resulted prejudicially to the defendant. During the cross-examination of the defendant the government's counsel asked him if he did not specialize in abortion cases, and further whether that had not been, in connection with dispensing drugs, the greater part of his practice, all of which he positively denied. On further cross-examination, he was asked if he had not, while at a local drug store to procure a drachm of morphine, which the clerk, a Mr. Clark, had to obtain from another drug store, leaving the defendant in charge of the store awaiting his return, taken from the back part of the store a certain bottle containing morphine, and carried the same to his office, without the knowledge of the clerk, to which the defendant answered positively in the negative. Thereupon the defendant was asked especially if, just prior to the date of procuring the morphine on June 6, 1922, he

had not purloined and taken, without the knowledge of the clerk at the drug store, a bottle of cocaine, which he positively denied, saying that he purchased a bottle of cocaine from the store on the 6th of May, which date he later corrected, after referring to his record, and stated that it was purchased April 28th.

At the conclusion of the defendant's testimony, the government called in rebuttal the drug clerk, Clark, who, over objection of the defendant, was allowed to go fully into the defendant's applying for the morphine; of the witness' going out to get the same, leaving the defendant in charge of the drug store, and of the taking of the bottle containing morphine from the store, which, however, he did not miss until the next day, the 8th instant. This witness described the location of the place where the morphine was kept, and the habit of allowing persons to go behind the counter to the prescription department, as bearing upon the exclusiveness of the opportunity of the defendant to take the same. The court thereupon announced at the conclusion of the testimony of the witness Clark, as follows:

"The evidence is stricken out relative to the disappearance of the bottle containing morphine from the prescription case."

The court apparently made no ruling excluding the questions as to larceny of the cocaine, and though the inquiries regarding the crime of abortion and that of dispensing drugs being the defendant's chief business were promptly stopped, it was not until both matters had been illegally brought to the attention of the jury, and answered by the defendant.

[1] While much discretion is reposed in trial courts as to the manner and method of procedure before them, including the introduction of testimony, still there are well-defined and fixed rules governing them, beyond which they must not go. The most important thing to be attained is a fair and impartial trial, and anything that impugns or infringes on this right, operating prejudicially to an accused, can never be allowed, and should not be sustained. It is axiomatic, and must be accepted in criminal trials, that accused are presumed to be innocent, and that their characters cannot be inquired into, unless put in issue by themselves, and, of course, other alleged crimes committed, not related to the offense under trial, that tend to their prejudice and embarrassment in making their defenses, cannot be the subject of investigation in the pending trial of another case, under the guise of cross-examination, where the defendant offers himself as a witness, save in cases where intent is an essential ingredient, or the subject of inquiry is so related to the main offense as to throw material light thereon, and even in the latter cases, it will not be permitted, where to do so would prejudice the accused. To say that what was done in this case was prejudicial to the defendant, is to state the same but mildly.

[2] The defendant, a licensed physician, evidently a man of some learning and intelligence, while under trial for a statutory offense of having given several prescriptions for morphine and dispensed same to one claimed not to be in fact a patient, and not in the legitimate course of his professional practice, is suddenly put to the inquiry whether or not his chief source of business was not that of a producer

of abortions, a most serious and degrading offense; also whether he was not a drug vendor, and, in the two capacities named, he did not chiefly earn his living, neither of which offences had any connection with or relation to the offence under trial. Finally he was asked, in effect, if he was not a common thief, engaged in stealing drugs from neighboring drug stores. The latter inquiry was gone into fully as part of the trial in the case then being tried. Evidence was introduced to prove the accused guilty, and while what the court said and did in the end was, from the court's viewpoint, favorable to the accused, or rather that the matters did not belong in the case, it by no means followed that the jury agreed with the judge, and that their minds were not materially influenced thereby in reaching their conclusion. Nor can it be seriously doubted that what occurred in reference to abortions and dispensing of drugs generally, regardless of the court's action in striking out such evidence, did not likewise prejudicially affect the jury in their consideration of the case properly against the accused, and from the record it seems that the court made no ruling excluding the inquiry and testimony as to the alleged purloining of the cocaine.

Sight should not be lost of the fact that but little testimony is frequently necessary to raise prejudice against an accused in the position and under the circumstances of the defendant here, as well in the matter of the alleged theft, as the violation of the ethical rules governing the profession to which he belongs, respecting the other insinuations against him. What was said by this court in Bullard v. United States, 245 Fed. 837, 158 C. C. A. 177, seems peculiarly appropriate here. The accused was tried and convicted of illicit distilling. On the trial the defendant testified, and vigorously denied all connection with or knowledge of the existence of a still on his premises. Upon cross-examination he admitted that he had been indicted for assault and battery, pleaded guilty, and paid the fine. He was then asked if he had not been indicted for other offenses, including adultery. This he also admitted, but said the case had been "squashed." The government thereupon offered the judgment roll to show the case had not been quashed, which, after considerable colloquy between counsel, was admitted in evidence over the defendant's objection. This court, speaking through Judge Knapp, said:

"We are not aware of any theory upon which this ruling can be defended. The subject-matter of the question addressed to Bullard was obviously collateral to the issue on trial and the government was bound by his answer. Indeed, it is elementary that contradiction in such case is not * * * permissible. The district attorney, in pursuing an inquiry wholly unrelated to the charge under investigation, took the risk of replies which would defeat the effort to show that the witness was a man of bad character or otherwise unworthy of belief. * * * The prejudicial effect of this evidence can scarcely be doubted. Not only was it claimed to refuse Bullard's assertion that the adultery indictment had been quashed, but the recitals in the 'adjustment' order, in terms and by inference, disclosed a condition of affairs in defendant's household which the jury could not fail to regard as highly discreditable. That their verdict was influenced by the damaging impression which this order would naturally produce seems to us by no means improbable. * * * And the difficulty is that the mistaken ruling, however commendable its purpose, permitted the jury to find that Bullard was untruthful in saying that the adultery case had been quashed, and to further find that he had in effect confessed an immorality which is

a criminal offense under the laws of South Carolina. The obvious tendency of the evidence, if the jury found against him on this collateral issue, was to place the defendant in a most unfavorable light and thereby give unfair support to the charge for which he was on trial. That the admission of this evidence was reversible error seems to us an unavoidable conclusion."

Counsel for the United States cite in support of their claim to the right to introduce proof of other offences than that on trial, two cases from this court, viz. Fields v. United States, 221 Fed. 242, 137 C. C. A. 98, and Christopoulo v. United States, 230 Fed. 788, 145 C. C. A. 98, also Rau v. United States, 260 Fed. 131, 171 C. C. A. 167, a decision of the Circuit Court of Appeals for the Second Circuit. It will be found, upon a careful examination of these decisions, that they do not support the contentions claimed, though, under the Christopoulo Case, some color is given for the same. In the Fields Case, the subject of inquiry of the defendant was as to his conviction in a revenue case, for a similar offense, and the case from the Second Circuit, Rau v. United States, supra, strongly supports the views here contended for by the appellant. Moreover, this court in Day v. United States, 220 Fed. 818, 136 C. C. A. 406, and in Carpenter v. United States, 280 Fed. 598, 600, in express 'terms refused to allow the introduction of other transactions than the one on trial, unrelated to the main case, unless in instances where the intent with which the offense was committed were in issue.

The defendant in the tenth assignment of error urges that the judgment of the court should be set aside, as to allow its enforcement because of its severity, would constitute excessive, cruel, and unusual punishment, contrary to the Eighth Amendment of the Constitution of the United States. We do not deem it necessary, under our conclusions as hereinbefore stated, to consider this assignment further than to say, in view of a new trial of the case, should one, in the light of the punishment already received by the accused, be had, that from our viewpoint we do not see anything in the case to warrant severe or unusual punishment.

Reversed.