## MANSBACH v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. February 8, 1926.)

No. 3359.

1. Criminal law ⟨⟩686(2)—Granting government's motion to reopen case for further testimony after it had rested held not error.

Granting of government's motion, after it had rested on proving accused's connection with operation of stills by codefendants, to reopen case for further testimony as to his guilt of failure to register, pay tax, etc., as charged in other counts of indictment, *held* not error.

2. Internal revenue ⟨⟩47—Government held required to prove accused's failure to register, pay tax, and give bond under revenue laws.

Where accused's connection with operation of stills in alleged violation of Rev. St. §§ 3242, 3259, 3281, 3282 (Comp. St. §§ 5965, 5995, 6021, 6022), was proved, and he pleaded not guilty, government was required to prove that he did not register, pay tax, and give bond as required by such statutes.

3. Internal revenue ⟨⟩2—Revenue laws, requiring registration, payment of tax, and giving of bond, not repealed by Eighteenth Amendment and National Prohibition Act (Const. Amend. 18; Act Oct. 28, 1919 [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).

Rev. St. §§ 3242, 3259, 3281, 3282, prohibiting distillation of liquor without having registered, paid tax, and given bond as required thereby, were not repealed by Const. Amend. 18, and National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

4. Intoxicating liquors ⟨⟩223(1)—Proof of violation of revenue laws not necessary to conviction under National Prohibition Act (Act Oct. 28, 1919, tit. 2, § 3 [Comp. St. Ann. Supp. 1923, § 10138½aa]).

Proof of failure to register, pay tax, and give bond as required by Rev. St. §§ 3242, 3259, 3281, 3282, is not necessary to conviction of manufacturing and possessing liquor in violation of National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa).

5. Criminal law ⟨⟩376—Evidence assailing accused's character not admissible until accused puts character in issue.

Evidence assailing accused's character is not admissible, until accused himself puts his character in issue.

6. Criminal law ⟨⟩369(1)—Evidence of previous conviction not admissible to show likelihood that accused would commit crime again.

Evidence of previous conviction is not admissible to show that accused would be likely to commit the crime again.

7. Witnesses ⟨⟩337(5)—Commission of another crime admissible to affect accused's credibility as witness.

Under law of New Jersey, which, in absence of federal rule in third circuit, controls in district of New Jersey, accused's conviction of another crime may be shown on his cross-examination, to affect his credibility as witness, but details of first crime cannot be inquired into for purpose of proving second.

8. Witnesses ⟨⟩350—Cross-examination of accused as to previous convictions held not error.

In trial for manufacturing and possessing intoxicating liquor, where accused testified on both direct and cross-examination that he had been convicted of possession of liquor, cross-examination as to character and number of convictions, in order to affect his credibility, was not error, though pressed with little regard for rule prohibiting inquiry into details of previous convictions for purpose of proving commission of crime charged.

Buffington, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Morris Mansbach was convicted of possessing stills and engaging in distilling business without registering, paying tax, and giving bond, of making mash intended for distillation in unauthorized distillery, and of manufacturing and possessing intoxicating liquors, and he brings error. Reversed in part, and affirmed in part, with direction to remand for resentence.

Henry W. Braude and McAvoy & Braude, all of Philadelphia, Pa., for plaintiff in error.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Richard C. Plumer, Asst. U. S. Atty., of Newark, N. J.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The indictment against Morris Mansbach, Solomon

Feuchtbaum and Benjamin Feuchtbaum contains six counts. The first four, drawn under Sections 3242, 3259, 3281, and 3282 of the Revised Statutes (6 U. S. Comp. Stat. §§ 5965, 5995, 6021 and 6022), charge violations of the revenue laws, in that, having in their possession stills and engaging in the business of a distiller, (1) they failed to register with the collector of internal revenue for the district wherein the business was conducted; they carried on the business (2) without paying the tax and (3) without giving bond as required by law; and (4) they made fermented mash fit and intended for distillation in a building other than a distillery authorized by law. The remaining two counts charge the manufacture and possession of intoxicating liquors in violation of the National Prohibition Act, Title 2, Section 3 (Comp. St. Ann. Supp. 1923, § 10138½aa). Mansbach was put on trial alone; the other defendants were witnesses against him. After conviction on all counts the court imposed sentence of imprisonment on the second, third, fourth and fifth counts (terms to run concurrently) and of fines on the first, second, third, fourth and sixth counts. Mansbach then sued out this writ, assigning as error several matters of which we regard only two as substantial. The first is the refusal of the court to grant his motion to direct a verdict of acquittal under the first four counts of the indictment.

[1] At the trial witnesses for the Government testified they found four stills and about one thousand gallons of mash in the possession of the two Feuchtbaums. The controversy mainly concerned Mansbach's relation to the stills and to their operation by the Feuchtbaums. The evidence was sufficient to prove his guilty connection. There the Government rested. The defendant then made his motion for acquittal under the first four counts on the ground that there was no evidence of his failure to register, to pay the tax, to give a bond, or that the mash was made in a building other than a lawfully authorized distillery. This being true, the Government asked that the case be re-opened for further testimony. The court granted the motion and in doing so we think it committed no error. The Government then called Benjamin Feuchtbaum who testified that he had not registered, paid the tax, given a bond, and in effect had made mash in a building which was not a lawful distillery but that he did not know what Mansbach had done in these matters. Again the Government rested and the defendant renewed his motion for a directed verdict on the same

ground. The motion was denied and the case submitted.

[2] Of course, testimony by Feuchtbaum that he, an alleged employee of Mansbach, had failed to do the things which the counts charge as violations of the revenue laws was not evidence that Mansbach had failed to do them or that Mansbach had violated the laws in these respects. In consequence there was no evidence that Mansbach, the defendant on trial, had committed the crimes charged. Realizing this, the Government now says that it was not required to prove the allegations of the counts which charge the offenses of failing to register, to pay the tax, etc., for the reason that under authority of United States v. Davis, Fed. Cas. No. 14,928, and other cases to be referred to, "it is incumbent upon the defendant to show that the special tax was paid; * * * it devolves upon the person charged, to show a compliance with the requirement of the law." This expression is correctly quoted from the cited case but when read in connection with the context and the matter to which it was addressed its meaning is very different from what its words, standing alone, import. The charge of the indictment in that case was "keeping an illicit still." To prove the charge, the Government offered evidence that "there was nothing about the distillery meeting the requirements of the law to constitute it a lawful distillery; that no special tax had been paid, or any bond given, nor was it insisted by the defendant that any attempt had been made to comply with the law, or that it was in any way a legally authorized distillery." The court, giving the jury the usual instruction in regard to the presumption of innocence "until the contrary is shown by sufficient proof," said in the charge:

"It is incumbent upon the United States to produce such proof, either by their own evidence, or it should arise out of the evidence of the defendant.

"To authorize a verdict of guilty under the first count, it is necessary that the proof should satisfy you that the defendant did carry on the business of a distillery * * * without having paid the special tax as required by law. * * * If you shall be satisfied that the business was so carried on, *then* it is incumbent upon the defendant to show that the special tax was paid * * *; it devolves upon the person charged to show compliance with the requirements of the law, and that not having been shown by the evidence the presumption of law is that it has not been done."

In view of the positive evidence for the Government that the tax had not been paid and the bond had not been given, the quoted expressions either refer to the defense which the defendant must make to meet the evidence introduced by the prosecution to sustain the charges of the indictment or they are dicta. In either event they do not rule this case.

Barton v. United States (C. C. A. 4th) 267 F. 174, is no closer to the case at bar. There the defendant was indicted under several provisions of the revenue laws, including section 3281, requiring a distiller to give bond. As reported, the testimony showed that "when the illicit distillery was found by the officers" it was ready for operation. No one was present, but later the defendant and others came to the place and engaged in incriminating conversation. The trial judge charged the jury that, "when one is found at an illicit distillery, it becomes incumbent upon him to give some explanation of his presence there." Approving this instruction, the reviewing court held that, an illicit distillery is a business or operation wholly prohibited by law, and that, like the familiar principle of law by which one possessing stolen goods is presumed to be guilty of larceny until he satisfactorily explains his possession, the presence of one at or about an illicit still raises the criminal inference of his complicity in its unlawful operation until, by explanation, he satisfactorily shows his innocence. But the whole question in that case was predicated upon the fact of an "illicit" distillery. How that fact was proved, the report of the case does not show. Moreover, the quoted ruling had to do with the guilty relation of the defendant to the still, not with the illicit character of the still. In the case at bar the defendant's connection with the stills was proved but the illicit character of the stills was not established by any proof. Until the illicit character of the distillery is established, the criminality of the defendant cannot be determined. Therefore Bartram v. United States, on whose law we express no divergent opinion, does not rule this case.

The next case on which the Government relies, McCurry et al. v. United States (C. C. A. 9th) 281 F. 532, is closer to the one at bar. The indictment, evidently, was drawn under the registry, bonding and building distillery provisions of the revenue laws. Sections 3259, 3281 and 3282, R. S. The trial court instructed the jury that the burden of showing registration of the still and filing the bond was on the defendants and that

the prosecution need only prove circumstances from which non-performance of the acts required by the law might be inferred, whereupon the burden of proof shifted to the defendants. The report of the case does not disclose what were the proven circumstances from which the inference of guilt was permitted and on which the burden of proof shifted beyond the fact that the defendants "made no claim of ownership, interest in, or knowledge of the still." In reference to this circumstance, to which the court alluded as one of "great significance," it said: "This was in accordance with their plea of not guilty, and was a practical admission that they [the defendants] had not registered the still, nor given bond therefor. * * * The absence from the case of any claim of ownership, intent, interest in, or knowledge of the still, on the part of the appellants, was a material circumstance, sufficient to shift the burden of proof, and justify the instruction of the court to the jury that the burden was upon the defendants to prove the registration of the still and filing of bond."

Inclined always, in comity, to defer to the decision of courts of equal jurisdiction, we are unable to follow this reasoning because, in our view, a plea of not guilty can not be so interpreted. The plea of not guilty entered in the case at bar is a denial by the defendant that he operated the stills without registering, paying the tax, or giving bond. Failure to register, to pay the tax, and give bond when operating the stills are the acts which, under the law, constitute the offenses and we can not hold that implicit either in the defendants silence or in his denial of the commission of the offense there is an admission of its commission. The question of guilt is to be determined by evidence of the doing or failure to do what the law forbids or requires. Under the plea of not guilty the offenses charged stand out, waiting to be proved by the one that makes the accusation.

The remaining case on which the Government relies is Goodfriend et al. v. United States (C. C. A. 9th) 294 F. 148, in which four counts of the indictment were framed under the provisions of the revenue laws here concerned. Without stating the facts, the court followed its ruling in McCurry et al. v. United States (C. C. A.) 291 F. 532.

[3] Although the Eighteenth Amendment to the Constitution and the National Prohibition Act have greatly affected the manufacture and sale of distilled spirits, they have not repealed the provisions of the revenue laws

here in issue. These provisions forbid the distillation of liquor without compliance with their requirements. When not complied with, a still is illicit; when complied with, a still is licit, so far as it is affected by this class of legislation. It is a wholly lawful or a wholly unlawful thing, and when in a criminal action under the revenue laws it is charged to be unlawful, its character can not be determined merely by possession but must be determined by evidence that its possession is not accompanied with the formal requirements of those laws. Conclusive evidence of such facts is always available at the office of the local collector of internal revenue. There is in the record no evidence of any kind on these issues. Therefore we are constrained to reverse the judgment of sentence under the first, second, third and fourth counts of the indictment.

[4] Reviewing the judgment entered on the verdict under the fifth and sixth counts charging unlawful manufacture and possession of liquor, we come to the National Prohibition Act, a law altogether different from the revenue laws, enacted with a different object, charging different offenses, provable by evidence of a different kind. To convict for the offense of unlawful manufacture and unlawful possession of liquor under this law, proof of failure to observe the registry, tax paying and bonding requirements of the revenue laws is not essential, though of course proof of the forbidden acts is necessary. The record contains such evidence in sufficient measure first to justify the submission of the case and next to sustain the verdict rendered.

Error is assigned to rulings of the court in admitting some of this evidence and particularly to the admission, over objection, of answers to questions concerning the previous criminal record of the defendant.

[5-7] Briefly stated, the applicable law is this: By general rule of law, evidence for the prosecution assailing the character of a defendant in a criminal action is not admissible unless the defendant himself has put his character in issue. The reason for the rule, aside from its obvious fairness, is that previous conviction of a crime wholly independent of the one for which the accused is being tried, even though it be of the same character, does not prove him guilty of the crime charged in the pending indictment. Hence evidence of a previous conviction is not admissible as tending to show that the accused would be likely to commit the crime again. Thompson v. United States (C. C. A. 3d) 283 F. 895; Guilbeau v. United States (C. C. A. 5th) 288 F. 731; Newman v. United States (C. C. A. 4th) 289 F. 712; Jianole v. United States (C. C. A. 8th) 299 F. 496. To this general rule there are exceptions. One arises under the law of New Jersey, which, in the absence of a federal rule in this circuit, controls. It is that if the defendant offer himself as a witness, his conviction of another crime may, on cross-examination, be shown for the purpose of affecting his credibility as a witness. State v. Hendrik & Stanton, 70 N. J. Law, 41, 45, 56 A. 247; State v. Mount, 73 N. J. Law, 582, 64 A. 124. But here the New Jersey rule stops and does not permit the prosecutor to follow up the question and inquire into the details of the first crime for the purpose of proving the commission of the second.

[8] This being the law, on which doubtless the learned trial judge was well informed, a curious situation arose. In his direct examination the defendant, apropos of nothing, was asked this question: "By the way, you have been convicted of having liquor in your possession, haven't you?" He answered: "Yes." Thus the defendant, instead of putting his good character in issue, himself put his bad character in evidence. In this state of the record the prosecuting attorney on cross-examination, adverting to the defendant's previous admission of conviction, asked him several questions. In asking these questions he was, of course, limited by the New Jersey rule which gave him the right not to explore the defendant's previous record and bring out the details of his previous convictions but to ascertain the character of his convictions—whether for possession, transportation, sale, or manufacture of liquor, or for larceny or perjury, as conviction for one or another of these offenses of different grades would affect his credibility as a witness. For the same purpose he also had the right to inquire as to their number. Responding to this line of cross-examination, the defendant admitted two convictions but stood by his voluntary statement that they were for the lesser offense of possessing liquor. Although from the manner in which the prosecuting attorney framed his questions and the tone in which he propounded them, it is apparent that he pressed them with little regard to the rule, the result (more by chance than otherwise) was that the cross-examination fell within the rule and therefore did not involve error.

The judgment of sentence so far as it was imposed on the first, second, third and

fourth counts is reversed and so far as imposed on the fifth and sixth counts is affirmed, with the direction that the case be remanded to the District Court for re-sentence of the defendant to imprisonment under the fifth count in a prison provided by law.

BUFFINGTON, Circuit Judge (dissenting). The proof of the government in this case was: That Solomon and Benjamin Feuchtbaum jointly owned a farm in New Jersey; that on it was their dwelling house, and near by a dairy; that under it was a cellar, where ice was stored; that from the dairy to the cellar of the house was a tunnel about 75 feet in length, which served to drain the water from the ice to a sewer in the dwelling house. That Morris Mansbach, the accused, came to the premises and asked Benjamin "if he could rent a dark place some where on the farm." He was shown the cellar under the icehouse, and he then said to Benjamin "that just suited him and then he made arrangements with me that I should work for him for $100 a week," after two weeks raised to $150. That Mansbach then brought in his large touring car, from time to time, the equipment suitable for distilling corn whisky, brought the workmen, and personally assisted in outfitting the distillery. During the two weeks required to equip it, amongst other apparatus he brought were two stills of 200 gallons each and two of 150 each. Near the house six barrels of 50 gallons each were sunk underground and connected by pipes with the dairy cellar, so that the whisky as distilled would pass to them. Leading from the sunken barrels into the cellar of the house were pipes or hose, through which the liquor could be siphoned from the barrels by one who was in the house cellar. It was also proven that the dairy cellar had no windows in it, and the outside entrance which led into it was closed up after the apparatus was installed. Access to the dairy was only had through the drain tunnel, which was lighted by lanterns, and access from the house to its cellar, and consequently to the tunnel entrance, was cut off when cellar stairs were drawn up. The steam used in operating the dairy was carried down to operate the stills. The proofs showed that, after the plant was installed, Mansbach, for four months, brought to it in his automobile all the sugar corn used in distilling, came every Monday and paid Benjamin Feuchtbaum his weekly wages, paid for repairs and a weekly coal bill of five

tons, and each week took away some 40 to 50 gallons of corn whisky.

As the stills were steam-fed from the dairy, the entire operations of stilling and storing were carried on underground, as access to the dairy cellar could only be had through the dwelling house 75 feet away, as the passageway from the house to the cellar only existed when the stairs were swung to position, and as the Feuchtbaums continued farming and Mansbach brought all the supplies and carried away all the products by night, the conditions, if these proofs were believed, were ideal for successfully carrying on illicit distilling.

It is not pertinent to detail how the government officers discovered the place, further than to say that, when they visited the house, they met such a strong smell of corn mash that they trailed it to the house cellar, and, while exploring the latter, they caught Benjamin Feuchtbaum emerging from the tunnel with a lighted lantern. Digging thereafter between the house and dairy, they located the tunnel. Thereupon the Feuchtbaums admitted their guilt, and, when subsequently indicted with Mansbach on the present indictment, pleaded guilty, went on the stand as witnesses for the government, and proved the foregoing facts.

In addition thereto, the record presents these additional facts: While the officers were arresting the Feuchtbaums, Mansbach came along the highway in his car and turned off to come to the Feuchtbaums' house. Seeing a number of persons about, he backed out and started to go away, when an officer jumped on the running board, arrested him, and found several bottles of corn whisky in the pockets of his car. Asked whether he was owner of the still, "he made no answer," and in response to the assertion of the officer, "You are paying Benny $100 a week," his answer was, "That has got to be proved." The proofs also showed the Feuchtbaums had paid no tax, given no bond, and had not registered the illicit stills which Mansbach had brought to the premises. But, in addition to these proofs of the government, the record shows that Mansbach, in addition to his plea of not guilty, went on the stand. He denied that he had rented the premises; denied that he had employed the Feuchtbaums; denied he had furnished and installed the stills and plant; denied he had brought the supplies and that he had paid for the coal or paid wages. Showing his relation to illicit liquor transactions, he proved affirmatively he had theretofore been convicted for the

illegal possession of liquor and on cross-examination, admitted he had been convicted three times in New York and New Jersey, for such illegal possession of liquors; that he had been introduced to the Feutchbaums by some man he could not locate; that he visited the Feuchtbaums for the purpose of buying liquor from them; that "he (Feuchtbaum) wanted to know who I am, and where I lived, and they said they notified him, and, if I am the right fellow, they would do business with me"; that later he went back, saw the stills several times, and got from 40 to 50 gallons of liquor from them weekly thereafter, paying $4 and $5 a gallon therefor.

Mansbach, in his testimony, also referred to the matter of still registration, and was asked by his counsel the question whether he "set up certain stills, and have in your possession and custody and under your control such stills, and fail and neglect to register the same with the collector of internal revenue of the United States." To which he answered: "I did not." Exactly what Mansbach meant by his answer to this negative pregnant question may be uncertain, but it is certain that he either meant that he had, or that he had not, registered the stills, and the jury, thus having before it this testimony in the matter of registration, could fairly infer from his answer that he had not registered the stills, all relationship with which he denied. Moreover, when, later, the question of registration was raised, the court gave his counsel the privilege of recalling and asking Mansbach about it, saying, "You can ask Mansbach," which permission counsel declined.

Under all these proofs of the government, in view of the fact that Mansbach went on the stand, showed he had no connection with the stills, but showed his knowledge of their illegal character, of his being invited by the court to give his testimony as to registration or the contrary, and of the legal fact that in view of his own testimony, showing the clandestine, illegal character of these stills, he could not make a legal registration of a distillery which, the proofs show, had no taint of legality, was it the duty of the trial judge to instruct the jury he could not be convicted? In other words, as we see it, the simple question: Was it the duty of the government to show that Mansbach had not legally registered an illegal still? To me it is clear that, under such proofs of the illegal character of the stills, the defendant, when he pleaded not guilty, and thereafter went on the stand and based his defense on the fact that, while he knew of the illegal

character of the stills, he had had no part in erecting or operating them, the burden was on him, and not the government, to prove compliance with the law by registration, if that bore on the issue and was a matter of defense.

But, apart from my own view in that regard, I am moved by the reasoning of adjudged cases, to a few of which I refer. The situation here was stronger than in United States v. McCurry, 281 F. 532, where the Circuit Court of Appeals of the Ninth Circuit said:

"It is next assigned as error that the lower court erred in instructing the jury that the burden was upon the defendant to show the registration of the still and the filing of the bond. The court instructed the jury that the prosecution need only prove the circumstances from which can be presumed lack of registry and bond filed, whereupon the burden shifted to defendants to prove registration and filing of bond. A circumstance of great significance against the registration of the still and filing of a bond by the appellants was the fact that they made no claim of ownership, interest in, or knowledge of the still. This was in accordance with their plea of not guilty, and was a practical admission that they had not registered the still, nor given bond therefor."

I note, also, that the present case does not rest on presumptions raised by the plea of not guilty, nor on the defendant not going on the stand and resting on the presumption of innocence. He went on the stand and proved his defense, and from the testimony he gave as to registration the jurors could draw their own inference from his omission to prove facts which he knew and could make clear. He showed his knowledge of the illicit character of these stills, he bought their illegal product, and when he was allowed by the court to say whether he had, or had not, registered the still, he, by his counsel, declined to state whether he had, or had not, done so. The situation was one to which Barton v. United States, 267 F. 174, applied, and in which the Circuit Court of Appeals of the Fourth Circuit held:

"There is no rule of reason that the same rule of reason and law should not apply as in the case of other unlawful possession of property. An illicit still is unlawul property, and its operation an unlawful act, and its possession would logically justify the same inference that would arise in the possession of stolen goods. It is a mere presumption, creating only a prima facie inference of guilt, and may be rebutted either

by circumstances, or by the direct testimony of the parties charged, or of other."

In the conflict of opinion between the present decision and that of the Ninth Circuit, in United States v. McCurry, supra, I find myself in accord with the latter decision, and therefore constrained to respectfully record this, my dissent, from the reversal of the sentence imposed on Mansbach on the first count of the indictment. In other respects I concur.