## HOPKINS

*v.*

## THE UNITED STATES.

---

CONSTITUTIONAL LAW; FORMER CONVICTION; MURDER;
SELF DEFENSE.

1. A former conviction of assault and battery is no bar to a subsequent indictment for murder, where the person assaulted dies within a year and a day; *construing* Art. V of the Constitution of the United States.
2. Where a wound inflicted by a person indicted for murder was the cause of death, the fact that the decedent was not prudent and did not take proper care of himself with a view to his possible recovery, or that he neglected to obtain proper medical treatment, will not relieve the prisoner of criminal responsibility for the blow inflicted.
3. A prayer for instruction by the prisoner in a murder case "that the weapon used, a quarter of a brick, was not a deadly weapon, and malice could not be presumed from its use," is properly rejected by the trial court, especially where the evidence fails to show whether the missile was quarter or half of a brick.

4. In a murder case in order to admit of the application of the law of self defense, it must be shown that the assault upon the defendant was imminently perilous. If it appears that the conflict was in any way premeditated by the defendant, that defense can no longer be set up. He must show that he was attacked and that he had good reason to believe that he was in imminent peril of his life or of great bodily harm.

No. 376. Submitted October 15, 1894. Decided November 5, 1894.

HEARING on a bill of exceptions by the defendant on the trial of an indictment for murder. *Judgment affirmed.*

The COURT in its opinion stated the facts as follows :

The appellant in this case, Charles Hopkins, has been tried and convicted, and is now under sentence of death, for the murder of Adam Gordon. He has brought his case here for review, upon alleged errors committed in rulings of the trial court. And to a clear understanding of the questions presented on the exceptions taken by the appellant, it may be proper that a brief statement of the facts be made.

It appears that, on the 14th of December, 1893, the appellant quarreled with Gordon, the deceased, in a saloon where the latter was employed, and the appellant struck Gordon in the face with his fist, whereupon Gordon struck the appellant on the head with a beer bottle. The parties were separated, and the appellant went away. This was near about noon in the day. Some time later in the day, according to the evidence, the appellant was heard to declare that he would " get even with Gordon," and again, that he was " going to kill Gordon." Some time thereafter, about 9.30 o'clock of the evening of the same day, the appellant returned to the saloon where Gordon was employed, found the latter seated in a chair with his head upon his hand, walked up to within four or five feet from him, and drawing from his overcoat pocket a brickbat, threw it with great force at the head of Gordon, striking him on the side of the head, and knocking him at once insensible. At the time

this blow was struck, Gordon being admonished of the approach of the appellant, was in the act of rising from his seat, but, upon receiving the blow, fell back into the chair. At the time of inflicting this blow with the brickbat, no words were passed between the parties. The appellant immediately retired, and went into the street; and so soon as he was sufficiently revived or recovered Gordon walked home. From this time on to the time of his death, Gordon continued to complain of the injury on his head, though he was most of the time able to be about, and did some work, until a few days before his death, which occurred on the 4th day of January, 1894. An autopsy was had, and it was manifest that death was the result of inflammation of the membranes of the head, which was directly caused by the blow inflicted by the appellant. The appellant himself was examined as a witness on the trial, and he testified that he did not throw the brickbat at the deceased until he saw the latter in the act of rising from his seat with a beer bottle in his hand.

It also appears, that a few days after the occurrence, the appellant was arrested, and after a detention of about a week, was tried in the Police Court of this District, on a charge of an assault and battery upon Gordon, then living, and was convicted and sentenced to jail, and before the expiration of the period of confinement Gordon died.

[At the trial, Dr. Schaeffer, a witness produced by the Government, who had made the autopsy on the body of the deceased, upon cross-examination was asked by counsel for the defendant the following question:

"Now, supposing the blow in this case to have been received three weeks before death and to have been followed by no medical treatment whatever, and the utter disregard of all treatment by the patient himself; in other words, engaged in active occupation all the time, and using alcohol, and not keeping quiet or resting; in fact, every motion and action on the part of the deceased being entirely opposite to

what his physician would have prescribed for him, would that be or not be sufficient cause to render an injury—which was not necessarily or likely fatal—fatal?"

The question was objected to, the objection sustained, and the defendant excepted.

At the close of the evidence, the defendant prayed the following instructions to the jury, the third and ninth of which were granted and the others refused, and to which refusal the defendant excepted:

"1. The jury is instructed as matter of law that in view of the proceedings against this defendant in the police court, record of which has been admitted here in evidence, the Government is estopped from establishing the intent to kill which is necessary to convict the defendant of murder, and therefore the jury cannot in this case find the defendant guilty of murder.

"2. The jury is instructed that if they believe from the evidence that the defendant had reasonable grounds to believe and did believe that the deceased was at the time of the assault about to inflict on him bodily harm, and that he used no greater force than was necessary to protect himself from real or apparent danger, they should acquit.

"3. The jury is instructed that the defendant is presumed to be innocent until his guilt is shown beyond a reasonable doubt, and that if the jury has a reasonable doubt they should acquit.

"4. The jury is instructed that if they believe from the evidence that the injury to deceased was only one of the causes of the disease of which decedent died, yet they also believe that it was such an injury as with ordinary care and attention would not have caused disease resulting in death, so that his death was due not to the blow but to neglect on the decedent's part and lack of proper medical treatment, they should acquit.

"5. The jury is instructed that if they believe from the evidence that the skull of the deceased was unusually thin and

also malformed, and the injury caused him by the blow was such as would not have been caused to a human being whose skull was of the usual thickness and formation, they should acquit.

"6. The jury is instructed that the burden of proof is on the prosecution to establish beyond a reasonable doubt that the cause of the death was the blow received by decedent from the brick thrown by defendant, uncaused by aggravated and unusual formation of brain or skull and unaided by neglect and lack of proper treatment for the blow received.

"7. The jury is instructed that the weapon used, a quarter brick, is not a deadly weapon and malice cannot be presumed from its use.

"8. That the court instruct the jury that if the accused at the time he threw the stone had, in good faith, a reasonable belief, founded upon the facts as they appeared to him at the time, that he was in imminent peril of his life or in danger of great bodily harm, then his act was justifiable, even if his belief was a mistaken one, and the verdict should be one of acquittal.

"9. If the jury believe that the accused at the time he threw the stone had, in good faith, a reasonable belief, founded upon the facts as they appeared to him at the time, that he was in imminent peril of his life or in danger of great bodily harm at the hands of the deceased, from which he could not reasonably save himself, except by the use of the force he did use, then his act is justifiable, even if his belief was a mistaken one, and the verdict of the jury should be one of acquittal."—REPORTER.]

*Mr. Henry P. Blair* and *Mr. Malcolm G. Bruce* for the plaintiff in error:

1. Unless the blow inflicted by the defendant caused the death he was entitled to an acquittal. It was certainly his right to have this fact determined, and the information sought by the question excepted to would have a direct bear-

ing on the fact itself.   Neglect and maltreatment will not excuse except in cases where doubt exists as to the character of the wound.   *State* v. *Corbett*, 1 Jones L. (N. C.) 267 ; *Mc-Allister* v. *State*, 17 Ala. 434.   There was nothing in this case which established beyond a doubt the character of this wound, and the line of examination sought to be introduced by this question might have resolved this point in the defendant's favor.   Greenleaf on Ev., Vol. 3, Par. 139 ; *State* v. *Scott*, 12 La. Ann. 274 ; *State* v. *Briscoe*, 30 La. Ann., Pt. 1, 433.

2. The defendant was convicted of assault and battery and sentenced therefor.   Such conviction was an acquittal of assault with intent to kill, for he could have pleaded this conviction to an indictment for that crime.   If he was not guilty of assault with intent to kill, the element of malice necessary to the crime of murder is wanting from this occurrence, and the death of the assaulted party would certainly not raise a presumption of malice.   To sustain an indictment for assault with intent to kill the evidence must be such as to warrant a conviction for murder had death resulted from the assault. *McCoy* v. *State*, 8 Ark. 451 ; *Cole* v. *State*, 10 Ark. 318 ; *Lacefield* v. *State*, 34 Ark. 275 ; 1 Russ. on Crimes, 719 ; Whar. Crim. Law, 467 ; Stark on Ev. 53 ; *Brown* v. *State*, 110 Ind. 486.

3. In a case in Kentucky, where the circumstances were more aggravated than in this case, a prayer identical with the second prayer of the defendant here was granted.   Had this prayer been granted it would have aided the defendant, and the error of the court in refusing to grant it injured him before the jury.   18 S. W. Rep. 528.   The facts in this case show that the entrance of the defendant in search of his friend, the overt act of the decedent in rising with a beer bottle in his hand, and the throwing of the brick were nearly simultaneous ; hence there was no opportunity for retreat or escape, and that element should not have been forced on the attention of the jury, as was done by the ninth prayer.   *Logue* v. *Comm.*, 2 Wright (Pa.), 265 ; *Regina* v.

*Thurborn,* 1 Den. C. C. 387.   The right of self defense is not impaired by mere preparation for a wrongful act.   *Cartwright* v. *State,* 14 Tex. App. 486.

4. The question as to what is a deadly weapon depends largely on the circumstances of each particular case; but it may be laid down as a general rule that a deadly weapon, from the use of which malice may be inferred, is not one a blow from which would ordinarily produce death, but one from which, as it was used, death would *probably* result. *Sylvester* v. *State,* 71 Ala. 17.

*Mr. A. A. Birney,* United States Attorney, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. Among the errors assigned, is one that the court below refused to instruct the jury that this conviction and sentence in the Police Court constituted a bar to the subsequent prosecution for murder, it being supposed that the question of the murderous intent was necessarily involved and negatived in the former prosecution. This defense is based upon the theory that the appellant was being twice put in jeopardy for the same offense.

By Art. V. of the Constitution of the United States, it is declared: "Nor shall any person be subject *for the same offense,* to be twice put in jeopardy of life or limb." This is but the recognition or declaration of an old maxim of the common law, and we must therefore resort to the common law authorities to ascertain its true meaning. *U. S.* v. *Gilbert et al.,* 2 Sumn. 19, 39. A party is not entitled to this protection of the Constitution unless he is being prosecuted twice for the same identical act and crime. 4 Black. Com. 336. There has been some diversity of decision upon this question of identity of crime; but the great weight of authority is in support of the principle that when, after the

first prosecution, a new fact supervenes, for which the accused is responsible, which changes the character of the offense, and together with the facts existing at the time, constitute a new and distinct crime, an acquittal or conviction of the first offense is not a bar to an indictment for the other distinct crime. This is expressly so held by the Supreme Court of Maine, in the case of *State* v. *Littlefield,* 70 Me. 452, where many of the authorities are referred to, and the result of them stated. In that case it was held that a former conviction of an assault and battery was no bar to an indictment for manslaughter, where the injuries resulted in death after the former conviction.

In 1 Chitty's Criminal Law, 453, the principle is stated in these terms: "As to the identity of the offense, if the crime charged in the former and present prosecutions are so distinct that evidence of the one will not support the other, it is inconsistent with reason, as it is repugnant to the rules of law, to say that the offenses are so far the same that an acquittal of the one will be a bar to the prosecution of the other." The same general principle is laid down in 2 East's Pl. Cr. 522.

The principle seems to be clear, that it is not sufficient merely that the former prosecution was for the same act, the same transaction; but it must have been for the *same offense*; " the same identical act and crime," the same in law as well as in fact. 2 Lead. Cr. Cas., notes by B. & H. 555.

This principle is nowhere better stated and illustrated than in the very clear and forcible opinion of Chief Justice Shaw, in the case of *Com.* v. *Roby,* 12 Pick. 496. In that case the indictment was for murder. The defendant pleaded in bar a conviction of an assault with intent to murder, before the death of the party assaulted. The Chief Justice, delivering the opinion of the court, in discussing the question of the identity of the offenses, said: "The indictment for murder necessarily charges the fact of killing as the essential and most material fact, which gives its legal

character to the offense. If the party assaulted after a felonious assault dies within the year and a day, the same act, which till the death was an assault and misdemeanor only, though aggravated, is by that event shown to have been a mortal wound. The event, strictly speaking, does not change the character of the act, but it relates back to the time of the assault, and the same act, which might be a felonious assault only had the party not died, is in truth shown by that event to have been a mortal wound; and the crime, which would otherwise have been an aggravated misdemeanor, is thus shown to be a capital felony. The facts are essentially different, and the legal character of the crime essentially different."

The principle of that case was followed in the case of *Com.* v. *Evans*, 101 Mass. 25, and it has been followed in many other of the State courts of the Union. Upon the principle maintained by those decisions, it has been held, that a conviction for an assault and battery is no bar to a subsequent indictment for manslaughter, or for murder, in case the person assaulted dies within a year and a day. *Boswell* v. *State*, 20 Fla. 869; *Burns* v. *People*, 1 Park. 182; *Johnson* v. *State*, 19 Tex. Ct. App. 453; *Curtis* v. *State*, 22 Tex. Ct. App. 227.

We conclude, therefore, that there was no error committed by the court below in refusing to instruct the jury upon the defense of former conviction, as requested by the appellant.

2. The next error assigned is, that the court refused to charge the jury, at the request of the appellant, that if they believed from the evidence that the injury to the deceased, inflicted by the appellant, was *only one of the causes* of the disease of which the decedent died; and if they should believe that said injury was such as with ordinary care and attention, the same could not have caused disease resulting in death; so that his death was due not to the blow inflicted, but to neglect on the part of the deceased, and lack of proper medical treatment—they should acquit.

In connection with this prayer for instruction, we may consider the objection to the question offered to be propounded to a witness as an expert, and which was disallowed by the court, as set forth in the first bill of exception taken by the appellant.

To say nothing of the want of evidence to support the proposition, the court was entirely correct, both in rejecting the prayer for instruction, and in disallowing the question proposed.

The authorities upon this question are decisive, and without any considerable variation. In this case, the evidence makes it clear beyond doubt that the wound inflicted by the appellant was the cause of the death; and if it were conceded that the deceased was not prudent and did not take proper care of himself, with a view to his possible recovery, or that he neglected to obtain proper medical treatment, such concession would not relieve the appellant of criminal responsibility for the blow inflicted. For, according to an old case, which has always been respected as good law, it was resolved, " that if one give wounds to another, who neglects the cure of them, or is disorderly and doth not keep that rule which a person wounded should do, yet if he die it is murder or manslaughter, according as the case is; because if the wound had not been, the man had not died, and, therefore, neglect or disorder in the person who received the wounds shall not excuse the person who gave them." *Rex* v. *Rew*, Kelyng, 26.

In 1 Hale, Pleas of the Crown, page 428, the doctrine is laid down that seems to have been followed in all subsequent well considered cases, where this question has arisen. That great authority on criminal law, says: " If a man give another a stroke, which it may be, is not in itself so mortal, but that with good care he might be cured, yet if he die of the wound within the year and day, it is homicide or murder, as the case is, and so it hath been always ruled. 3 Inst. 47.

"But if the wound or hurt be not mortal, but with ill applications by the party, or those about him, of unwholesome salves or medicines the party dies, if it can clearly appear, that this medicine, and not the wound, was the cause of his death, it seems it is not homicide, but then that must appear clearly and certainly to be so.

"But if a man receives a wound, which is not in itself mortal, but either for want of helpful applications, or neglect thereof, it turns to a gangrene, or a fever, and that gangrene or fever be the immediate cause of his death, yet, this is murder or manslaughter in him that gave the stroke or wound, for that wound, tho' it were not the immediate cause of his death, yet, if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so consequently is *causa causati*."

The same principle is laid down as text law, in 1 Hawk. P. C., Ch. 31, Sec. 10 ; 1 East P. C. 334; 3 Chitty Cr. Law, 726.

The doctrine of these authorities was fully examined and approved in the leading American case upon the subject, of *Com.* v. *Hackett*, 2 Allen, 136.   In that case the opinion was delivered by Chief Justice Bigelow, and in the course of the opinion it was said : "We find the authorities to be clear and uniform, from the earliest to the latest decisions."   And further on, the learned justice said : "It is certain that the rule of law, as stated in the authorities, has its foundation in a wise and sound policy.   A different doctrine would tend to give immunity to crime and to take away from human life a salutary and essential safeguard.   Amid the conflicting theories of medical men, and the uncertainties attendant upon the treatment of bodily ailments and injuries, it would be easy in many cases of homicide to raise a doubt as to the immediate cause of death, and thereby to open a wide door by which persons guilty of the highest crime might escape conviction and punishment."

In the case of *State* v. *Bantley*, 44 Conn. 537, where many

of the authorities are referred to, it was held, that if one person willfully inflicts upon another a wound calculated to destroy life, and death ensues therefrom within a year and a day, the offense is murder or manslaughter, according to circumstances; and the party is none the less responsible for the result, although it may appear that the deceased might have recovered if he had taken proper care of himself, or that unskillful or improper treatment aggravated the wound and contributed to his death. And so in the case of *State* v. *Morphy*, 33 Iowa, 270, in a well considered opinion by Mr. Justice Cole, it was held that if death ensues from a wound given in malice but not in its nature mortal, but from which, being neglected or mismanaged, the party dies, this will not excuse the person who gave it, but he will be held guilty of the murder, unless he can make it clearly appear that the maltreatment of the wound, or the medicine administered to the patient, or his own misconduct, and not the wound itself, *was the sole cause of his death.* The same principle was held and applied in the case of *Reg.* v. *Holland*, 2 M. & R. 351.

Upon these authorities, it is clear, the court below committed no error in refusing to grant the fourth prayer of the appellant. And with respect to the hypothetical question proposed, as set out in the first bill of exception, it is equally clear, that there was no error in refusing to allow that question to be put to and answered by the witness. In the first place, the question assumes a most important fact, without proof to justify it, that the injury inflicted was not necessarily or likely fatal. The question, however, is objectionable in other respects, in the manner of stating the facts to make up the hypothesis. But, assuming that the witness would have answered the question in the affirmative, the answer would have been quite immaterial to the defense, according to the authorities we have cited.

3. There is also error assigned in the court's refusal to instruct the jury, " that the weapon used, a quarter of a

brick, was not a deadly weapon, and malice could not be presumed from its use."

In the first place, the prayer assumes or states as a fact, that the brickbat, with which the wound was inflicted, was but a quarter of a brick. The brickbat does not appear to have been produced at the trial, and whether it was a half or a quarter of a brick, was not for the court to assume, but for the jury to determine. Whether it was a deadly missile weapon or not would depend largely upon the force with which it was thrown, and the part of the body receiving the blow. The best evidence of its dangerous character, and of what it was capable of doing, was the injury actually inflicted by it. A brickbat in the hands of a strong man, bent upon mischief, is certainly a formidable missile, and perilous to life if used in a malicious and dangerous way, as seems to have been the case here. The court was clearly right in rejecting the prayer.

4. Another assignment of error is made upon the rulings of the court upon certain propositions offered in respect to justification in the way of self defense. There were three prayers offered upon this subject, being the second, eighth and ninth, in the series of prayers offered by the appellant. The second and eighth of these prayers were rejected, and the ninth was granted.

There was not, in truth and reality, the slightest evidence tending to show justification for the infliction of the wound in self defense. The appellant's return to the saloon and attack upon the deceased was a premeditated action on his part. He states in his own testimony that he took up the brickbat for use in case he should have any trouble; and that he had his hand on the brick in his pocket when he entered the room and was ready to use it in case he should be again assaulted. He did not wait to be assaulted, but he stepped up to within a few feet of the deceased, and without the interchange of a word, threw his brickbat at the head of his victim, and turned and retreated from the room to the

street. There was certainly nothing in this to justify the application of the law of self defense.

It is laid down in text books of high authority, and also in decided cases, that if it appear that the conflict was in any way premeditated by the defendant, the defense can no longer be set up. And it must be proven that the assault upon the defendant was imminently perilous. The defendant must show clearly that he was attacked, and that he had good reason to believe that he was in imminent peril of his life or of great bodily harm. Whart. on Hom. 230; 2 Whart. Cr. Law (7th Ed.), Secs. 1020, 1021, 1022; *People* v. *McLeod,* 1 Hill (N. Y.), 377. Here there was nothing of the kind.

The appellant, however, was given the largest latitude in respect to his attempted justification by way of self defense, in having granted to him his ninth prayer. That instruction embodied the law with sufficient precision, if there had been facts to support it. But the court clearly committed no error in refusing to grant the second and eighth prayers of the appellant. They were neither right in principle nor supported by the facts of the case.

Upon review of the whole record we find no error of which the appellant can complain, and we must therefore affirm the judgment and remand the cause that the judgment may be executed.

*Judgment affirmed, and cause remanded.*