## PRICE v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted October 4, 1921. Decided November 7, 1921.)

No. 3555.

**1. Homicide ⬅⇒300(3)—Charge on self-defense held correct.**

A charge that, if defendant's situation was such that he honestly believed, and had reasonable grounds to believe, that he could save himself from serious bodily harm only by killing deceased, he had the right to kill him, is a correct and sufficient charge on the right of self-defense, since an honest belief implies reasonable grounds for the existence of such belief.

**2. Criminal law ⬅⇒829(5)—Requested charge on defense of habitation held covered by charge on self-defense.**

A requested charge that defendant had the right to use necessary force to eject deceased from his house, and, if, in ordering deceased from his house, the deceased approached the defendant so as to give reasonable grounds to believe defendant was in danger, defendant had the right to defend himself, did no more than raise the question of self-defense, where the defendant himself testified that the immediate cause of the shooting was his fear of bodily harm, so that the request was covered by the court's charge on self-defense.

**3. Criminal law ⬅⇒767—Court need not apply law to the facts.**

In a prosecution for homicide, where court had correctly defined the different degrees of murder and manslaughter, it was unnecessary for him to apply the law to the evidence, since that was the province of counsel, and the court's attempt to do so might have invaded the province of the jury.

**4. Homicide ⬅⇒302—Request to charge on right to have pistol held not required by facts.**

In a prosecution for homicide, which occurred in defendant's own home, where defendant's right to have a pistol in the house was not in any way questioned, and the issue was whether the killing was justifiable, requests for charges that defendant had a right to have the pistol in his house, and, if necessary, to use it, were properly denied.

Appeal from the Supreme Court of the District of Columbia.

Charles Price, otherwise known as Charles Miller, and otherwise known as William Miller, was convicted of murder in the first degree, and sentenced to be hanged, and he appeals. Affirmed.

James A. O'Shea, of Washington, D. C., for appellant.

John E. Laskey, Major Peyton Gordon, and J. J. O'Leary, all of Washington, D. C., for the United States.

ROBB, Associate Justice. Appellee was convicted in the Supreme Court of the District of murder in the first degree, and sentenced to be hanged. The material facts disclosed by the evidence for the government are as follows:

On the afternoon of Decoration Day, 1918, the deceased, Robert Smith, and three or four other men and several women were at the home of the defendant in this city, where they had obtained and consumed a moderate amount of intoxicating liquor. A controversy arose between Smith and defendant as to whether the former had

handed the latter a dollar and was entitled to change. Finally defendant directed his wife to "go back and get that thing," whereupon she went into an adjoining room and returned with a revolver, which she handed the defendant, who,. upon breaking it open, found it was not loaded. Thereupon defendant went into the adjoining room, returned, and asked Smith, "You want your change?" Smith replying in the affirmative, defendant shot him.

James Ashton, who was present "from the beginning of the trouble," testifying for the defendant, said:

"There was an argument took place about a dollar; that Smith gave Price a dollar for a half pint of whisky, and Price didn't give him the change, and didn't give the dollar back, and the argument took place and Price got the gun and shot Smith; * * * that Price did not order Smith out of the house."

The defendant, testifying in his own behalf, said that during the controversy about the dollar the men "got around him," and that he told his wife "to go get that thing"; that he "broke it down, to try to scare them out of the house"; that they would not go; that, as he told Smith to go out, Smith started toward him "with his hand in his hind pocket," and one of the other men "walks up to me [defendant] with a whisky flask, and that time I shot him" (Smith); that "witness had not been drinking that day." On cross-examination he admitted that, when his wife brought him the pistol, "he broke it open, found it unloaded, and went back for the cartridges."

Defendant's wife testified that, after she gave him the revolver, the altercation about the dollar continued, "and they got all around him, so Charlie [defendant] knocked some of them from the door, because they got between him and the door, so Charlie backed, backed, and backed into the room, and loaded the pistol"; that upon his return defendant requested Smith and his companions to leave, whereupon Smith "reached right up in his hind pocket, and at once Charlie shot him."

[1] The first assignment of error to be considered is whether the court properly instructed the jury as to the law of self-defense. The court in his charge said:

"If a person is so circumstanced or so situated that he honestly believes and has reasonable grounds for the belief that he can save himself from death or serious bodily harm only by taking the life of an assailant, he has the right to protect himself. In other words, if you believe from the testimony that Price in this case was in such a situation that he honestly believed, and had reasonable grounds to believe, that he could save himself from serious bodily harm only by killing Smith, then he had the right to kill him."

It is insisted, on behalf of the defendant, that this instruction did not meet every phase of the evidence. We do not understand counsel to contend that this charge was incorrect in point of law, nor do we think such a contention could be sustained. Beard v. U. S., 158 U. S. 550, 564, 15 Sup. Ct. 962, 39 L. Ed. 1086. The latest expression of the Supreme Court, in Brown v. U. S., 256 U. S. ——, 41 Sup. Ct. 501, 65 L. Ed. —— (May 16, 1921), is that—

"If a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant, he may stand his ground, and if he kills him he has not exceeded the bounds of lawful self-defense."

That is substantially the charge in the present case, for it would be legally impossible for a man honestly to believe a thing, unless reasonable grounds existed for the belief; in other words, the law regards as pretense, and not belief, that which has no reasonable basis. We are of the view that, under the charge as given, defendant's counsel was in no way embarrassed in presenting to the jury every phase of the evidence.

[2] The next assignment is based upon the court's refusal to charge "on defense of habitation." A prayer was offered to the effect that defendant had a right to order deceased from his house, and to use such force as was necessary to eject him, and that—

"If, in ordering the deceased from the house, the deceased approached the defendant, so as to give him reasonable ground to believe he was about to inflict serious bodily harm on the defendant, then the defendant had the right to protect himself, and, if need be, kill the deceased."

This proposed prayer did no more than raise the question of self-defense, already covered by the court's charge. The defendant himself testified that the immediate cause of the shooting was his fear of bodily harm.

[3] It next is insisted that the court did not charge "fully and substantially" on second degree murder and manslaughter. The court instructed the jury that there are three degrees of homicide in this District—murder in the first degree, murder in the second degree, and manslaughter—and then carefully and correctly defined each of these crimes. After defining first and second degree murder, the court said:

"So that, if you find in this case that Price deliberately and premeditatedly fired the shot that killed this Robert Smith, he is guilty of murder in the first degree. If you find that he did it without deliberate and premeditated malice—that is, without having used the premeditation and deliberation which is included in the definition of first degree murder—then he would be guilty of murder in the second degree, provided he did the act maliciously, with malice aforethought."

The court then instructed the jury as to the deliberation necessary to constitute first degree murder. The substance of counsel's contentions is that the court, after stating the law as to the different degrees of homicide, should have applied that law to counsel's theories of the facts. But that was the duty of counsel, and, inasmuch as the law was fully and correctly stated to the jury by the court, defendant could suffer no prejudice. Indeed, such a practice as that for which counsel contends might result in serious harm to an accused, through the invasion of the privilege of counsel and the province of the jury.

[4] The last assignment of error relates to the refusal of the court to charge on possession of the pistol. The various prayers offered on behalf of defendant were to the effect that the law permitted him to have a pistol in his house, and that, if necessary to defend

himself or his home, he had the right to use it, even to the extent of killing his assailant. The defendant's right to have a pistol in the house was not questioned or in issue, directly or indirectly. The question, as already pointed out, was whether the killing was justifiable. These prayers, therefore, were not applicable to the situation, and were properly denied.

It is quite evident from the evidence that the jury was justified in concluding that defendant, becoming angry because the deceased insisted on change for a dollar (which even one of defendant's own witnesses testified the deceased had given defendant), deliberately formed the purpose of killing him, sent for his revolver, discovered it was not loaded, went into another room, and loaded the weapon, and then returned to put his purpose into execution. We are convinced that defendant, not only has received a fair and impartial trail, but has been ably and conscientiously defended by counsel. Finding no error in the record, we must affirm the judgment.

Affirmed.