## MERCER v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. August 23, 1926.)

No. 3357.

1. **Criminal law ⬳706—Permitting prosecuting attorney, by questions asked, to disclose purported prior conviction of defendant, held reversible error, where defendant did not testify.**

In prosecution, under Cr. Code, §§ 37, 215 (Comp. St. §§ 10201, 10385), for conspiracy and use of mails to defraud through sale of corporate stock, where defendant did not testify, it was error to permit prosecuting attorney, by questions asked witness, to disclose purported prior conviction of defendant for forgery and fraud.

2. **Criminal law ⬳308.**

A defendant is presumed innocent until his guilt of offense charged is proved.

**3. Witnesses ⟾337(5).**

Defendant, as a witness, may be questioned within defined limits as to a former conviction, for purpose of affecting his credibility.

**4. Criminal law ⟾369(1), 376.**

As general rule, where defendant has not put in issue his reputation, or good character. or credibility, evidence assailing his character or showing his previous conviction is not admissible.

Buffington, Circuit Judge, dissenting.

In Error to the District, Court of the United States for the Western District of Pennsylvania; Robert M. Gibson, Judge.

Harry R. Mercer was convicted of using mails to defraud, and of conspiracy to defraud, and he brings error. Reversed, and new trial granted.

Charles B. Prichard, of Pittsburgh, Pa., for plaintiff in error.

John D. Meyer, U. S. Atty., and Arnold M. Replogle, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. On May 11, 1917, the defendant, Harry R. Mercer, was indicted with five others for having used the mails to execute a scheme and artifice to defraud, which they are charged with having devised, and for having conspired to commit an offense against the United States, in violation of sections 37 and 215 of the federal Criminal Code (Comp. St. §§ 10201, 10385). The indictment contains nine counts. The first eight relate to the misuse of the mails, and the ninth relates to conspiracy. The government charges:

That the defendants placed in certain newspapers of general circulation in the United States, and particularly in Pittsburgh, Pa., advertisements in which it was represented that high-class business and professional men could learn of exceptional opportunities to earn large incomes by communicating with the defendants; that when communications, in consequence of these advertisements, came to defendants, they represented that one of their number, Albert B. Windt, was the fiscal agent for the sale of certain treasury stock of the Peerless Wheel Company of Delaware, whose stock, originally $100,000, but later increased to $1,-000,000, was divided into 200,000 shares, of the par value of $5 each; that they further represented that the Peerless Company was to take over a certain patented automobile wheel "of demonstrated durability and su-periority over automobile wheels of other manufacture," that they were opening up a branch office in Pittsburgh, that the company was a going concern, whose stock had been sold to influential persons throughout the country, and was in a position to make and pay dividends; that, in consequence of these representations, they intended that James J. Powers and others would be induced to purchase large amounts of stock, and would be granted the exclusive right to sell stock in certain specified territory; that, in order to carry out their scheme and artifice, the defendants deposited in the United States mails certain letters addressed to James J. Powers and others; that these representations were false; that the Peerless Company was not a going concern, and had no assets, except those received from the sale of the so-called treasury stock; that the only men of influence connected with the company were those who were given bonus stock for the use of their names and influence; and that the main purpose of the defendants in getting control of the company was to secure the funds received from the sale of the stock for their personal benefit.

Mercer was put on trial December 1, 1924, 7½ years after indicted, and on December 13, 1924, was found "guilty of using the mails to defraud and of conspiracy to defraud." Whether he was found guilty of using the mails to defraud on one count, or on all eight counts, is not disclosed by the verdict. The case is here on Mercer's writ of error, which contains 54 assignments.

[1] It is necessary to consider only the one upon which he principally relies, which relates to questions asked Harry Hamill by the assistant United States attorney as to a former conviction of Mercer. Hamill had testified that he had known Mercer only a few weeks when the latter came to his office in 1916. He was then asked:

"Q. Isn't it a fact, Mr. Hamill, that you had been attorney for Mercer prior to that time? A. No; it is not a fact. I never knew about Mercer, never heard his name, and never saw him.

"Q. Isn't it a fact, Mr. Hamill, that you had represented Mr. Mercer at the time he was tried and convicted for the crime of forgery in Harrisburg, Pa.? A. No, sir; never heard of it.

"Mr. Pritchard: Now, if the court please, I want to object to that question as highly improper and prejudicial, and I now move to withdraw a juror, because of an unfair insinuation of the district attorney, calculated only to prejudice this jury, and es-

pecially in view of the fact that Mr. Hamill has answered the question, which he ought to have known he would answer that way. Mr. Hamill is a practicing lawyer in Chicago, and if there was such a record the district attorney could find out if this man were charged in Harrisburg, by a telephone call to the attorney of record. It is manifest that the only purpose was to prejudice this defendant in the eyes of the jury, and I now ask the court to withdraw a juror and continue the case.

"Mr. Replogle: If your honor please, we have testimony that this witness had Le Brun—

"Mr. Prichard: If the court please, there is another prejudicial remark.

"The Court: He is examining this witness, who has testified to a general organization of the company, and the good faith on the part of the witness and every one else concerned, and now it may affect the credibility of the witness in regard to that testimony, as to his general good faith. However, I will caution the United States attorney that I think that ought not be used, unless he is prepared to convict the defendant in case of a denial, because we do not want anything here in this case in the shape of mere insinuation by means of questioning. For the present I will deny the motion to withdraw a juror, but at the same time will instruct the jury that they are not to accept as a fact the declaration of the United States Attorney until proof of that nature has been introduced, in case it should be relevant. An exception is noted to the refusal to withdraw a juror.

"Mr. Replogle: Q. Is it not a fact, Mr. Hamill, that you knew that Harry Mercer, at the time you sent him out to sell stock among your friends at Jacksonville, Ill., had been convicted and had served sentence for forgery and for fraud? A. No, sir.

"Mr. Prichard: I renew my motion, if the court please. I now move, in view of the remark made by the district attorney, to withdraw a juror and continue this case; that remark being highly prejudicial and calculated to prejudice the jury against this defendant. This is all the more apparent in view of the answer of the witness.

"The Court: We will refuse it, but with the same caution to the jury."

The assistant United States attorney had most probably finished his declaration before defendant's counsel realized its effect and had time to object. However, after refusing to withdraw a juror and noting an exception, the learned trial judge again admitted substantially the same declaration.

Defendant had not testified, and did not afterwards testify. At no time did he put in issue his credibility ·or his reputation for good character, and therefore any testimony relating to a former conviction was inadmissible and highly prejudicial. Notwithstanding the knowledge of the assistant United States attorney that the witness had known Mercer. only a few weeks before he came to his office in 1916, that he had never before that time been his attorney, had never seen him, nor heard his name, yet, for the apparent purpose of damaging the defendant before the jury, he asked if the witness Hamill was not his counsel "at the time he was tried and convicted for the crime of forgery in Harrisburg, Pa.," and, still later, if he did not know that Mercer "had been convicted and had served sentence for forgery and for fraud."

[2, 3] The unfairness of the question, or question and statement combined, consists, not only in its admissibility in any form, but in the particular form in which it was asked. He did not ask if the defendant had been convicted of crime, but stated that he had been and then asked the damaging question, to which there could, in view of what the witness had just said, have been but one answer. The defendant was presumed to be innocent until his guilt of the offense charged was proved. If he had offered himself as a witness, he might, like any other witness, have been questioned, within well-defined limits, as to any former conviction, for the purpose of affecting his credibility. [4] But, not having testified, and not having put in issue his reputation for good character, or his credibility, the general rule of law is that evidence assailing his character or showing previous conviction is not admissible. Thompson v. United States (C. C. A.) 283 F. · 895; Guilbeau v. United States (C. C. A.) 288 F. 731; Newman v. United States (C. C. A.) 289 F. 712; Jianole v. United States (C. C. A.) 299 F. 496. When the defendant does offer himself as a witness, his previous conviction may be shown only to affect *his* credibility. State v. Henson, 66 N. J. Law, 601, 50 A. 468, 616; State v. Mount, 73 N. J. Law, 582, 64 A. 124; Mansbach v. United States (C. C. A.) 11 F. (2d) 221. The evident purpose of the assistant United States attorney, and what he actually did, was to get before the jury, in violation of all rules of evidence, damaging statements, put in the form of ques-

tions, which greatly prejudiced the defendant.

That Mercer, and not Hamill and his associates, was on trial, seems to have been overlooked. The trial· judge thought that the question was admissible, if the district attorney was "prepared to convict the defendant in case of a denial" by Hamill of defendant's previous conviction. Being prepared or unprepared in that state of the record did not have any bearing whatever upon the admissibility of the question. Hamill's credibility might be affected by the admission of proper evidence, but his credibility could not be affected at the expense of a fair trial, on legal evidence, to Mercer. Hamill had to be impeached, if at all, on admissible evidence. However depraved in character, and however full of crime the past life of the defendant may have been, he was entitled to a fair trial on competent evidence. Boyd v. United States, 142 U. S. 450, 12 S. Ct. 292, 35 L. Ed. 1077. Otherwise our courts would cease to be courts of law and become courts of men. Liberty regulated by law is the underlying principle of our institutions. Sparf and Hansen v. United States, 156 U. S. 51, 103, 715, 15 S. Ct. 273, 39 L. Ed. 343.

The learned District Judge in his charge referred to the objectionable statements, and said that, in view of Hamill's answer, there was no evidence of Mercer's previous conviction, and the jury should not consider it in passing upon *his* guilt. But they were not stricken out. They still stand in the record, and the jury was left under the impression, or, at least, might draw the inference, that they might consider them to affect the credibility of Hamill, and discredit him. These statements were improper, prejudicial, and rendered a fair trial impossible.

The judgment is therefore reversed, and a new trial granted.

BUFFINGTON, Circuit Judge, dissents.