## BORUM et al. v. UNITED STATES.
### No. 5323.

Court of Appeals of District of Columbia.
Argued April 6, 1931.
Reargued Oct. 5, 1931.
Decided Feb. 1, 1932.

302

Peter P. Richardson, of Washington, D. C., for appellant Borum.

James A. O'Shea and John H. Burnett, both of Washington, D. C., for appellant Logan.

Leo A. Rover and William H. Collins, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellants, whom we shall call Borum, Logan, and Guy, were indicted and convicted of first degree murder. They were sentenced to be electrocuted. The record contains fifty-one assignments of error. The circumstances of the killing were these:

About midnight of April 12, a federal prohibition agent named York discovered an automobile equipped with a smoke screen parked in an alley known as Brooks court, located in the northwest section of Washington. The automobile had been used that evening to transport a load of whisky from Baltimore to Washington, but when the officer drove into the alley the whisky had been removed and there was no one in the car. The agent, realizing the impossibility of moving the car without help, blew the horn in an endeavor to attract police assistance. The noise of the horn caused a number of colored people living in the alley, including Guy, to assemble and watch the proceeding; but no one offered to assist the officer. After a short time, probably twenty to thirty minutes, Borum and Logan came into the alley and walked toward the agent and, when a few feet away, Borum drew a pistol and shot him to death. At the time of the shooting, Guy was in the alley apparently in friendly conversation with the officer. After the shooting Borum fled and Logan got into the car that the officer was seeking to arrest and drove it out of the alley. Guy went out of the alley and called a policeman and returned with him to the scene of the shooting. He was arrested that night. Logan and Borum were arrested later.

All three made statements with relation to the shooting. Guy declared he had nothing to do with it, and both he and Logan stated that Borum fired the shot which killed the agent. On the other hand, Borum charged that Guy did the shooting.

While there are more than fifty assignments of error, the one principally relied upon was the action of the court in permitting the statement made to the police by the defendant Borum to be read to the jury on the ground that it contained matter which was not germane to the crime charged in the indictment. This makes it necessary to notice the statement. In it Borum told the police that on the afternoon of the day of the shooting he and Logan, with the assistance of Guy, connected the smoke screen to the automobile, and this done, he and Logan drove from Washington to Baltimore to get a load of liquor; that when they reached Baltimore a police officer stopped them and threatened to arrest them for having a smoke screen; and that this officer and another officer were bought off for $20, which Logan paid to let them go, as a result of which they were able to return to Washington with the whisky. He also stated they made deliveries at some five or six places in Washington, and then went into the alley where the shooting occurred, intending to deliver the last of the liquor to Guy, who lived in a house at the far end; and that this delivery had just been accomplished when the officer appeared, whereupon they left the immediate neighborhood. The statement then continued with an account of the shooting, which Borum, as we have already seen, ascribed to Guy. When the government was about to introduce the statement of Borum, counsel for Logan objected to so much of it as implicated Logan in an "alleged bribery attempt in Baltimore" and an "al-

leged purchase and transportation of liquor from Baltimore," counsel stating: "I am objecting to that part of the statement that refers to anything not germane to the happening in the alley. I do not think that what happened in Maryland or any things that are suggested other than those things that happened in the alley should be admitted." Counsel for the other defendants joined in the objection, but the court permitted the statement to be fully read to the jury. We think there was no error in refusing to exclude that portion relating to the Baltimore trip and its incidents.

The case of Crawford v. United States, 59 App. D. C. 356, 41 F.(2d) 979, is urged as sustaining the position of the accused in their objection to this evidence. In that case evidence admitted by the trial court was held to have been improperly admitted on the ground that it placed the reputation of the defendant in issue in a matter not related to the commission of the crime on which he was being tried. So also in the case of Robinson v. United States, 57 App. D. C. 143, 18 F.(2d) 185, we held it error to allow a witness to testify that the defendant had been engaged in keeping a house of prostitution for six months preceding the time of the robbery, on the ground that the evidence reflected upon defendant's character, which had not been put in issue, and did not tend to prove the crime charged nor connect the defendant with it. We think it clear that neither of these cases is controlling here.

■ It is, of course, fundamental that distinct and different crimes independent of that charged may not be used to establish guilt, and it is equally fundamental that the prosecution may not show previous general bad character or reputation of an accused unless and until the accused has put his character and reputation in issue, but it is just as much true that even a collateral or extraneous offense, when it forms a link in a chain of circumstances culminating in the offense charged, may properly be shown in evidence, and it is, therefore, the universal rule that testimony connecting a defendant with a different crime than that charged is admissible if it is so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, which is to say that where the two crimes are so connected as to be part of a general scheme, the evidence is admissible. The ground on which such evidence is allowed is that both crimes are connected with a single purpose and in pursuance of a single object. In such cases proof of the first is admissible to show a motive for the second.

The admitted facts in the case under consideration bring it well within the exception to the general rule. By undisputed proof, indeed by the admission of all the defendants, a definite connection is shown to have existed between the incidents related in the statement with regard to procuring the whisky in Baltimore and the later shooting of the officer, and it is perfectly obvious that but for the trip to Baltimore and the accomplishment of the purpose for which it was made, the offense for which defendants were tried would never have occurred. This visible connection between the two crimes makes the first not only admissible but tends to assist in the determination of the truth with regard to the latter. All three defendants took the stand and testified that in the late afternoon of the evening of the shooting, Borum and Logan agreed to go to Baltimore to procure a load of whisky, and Guy agreed, if they were successful, to buy a part of the contraband. All three, according to the evidence of Borum alone, aided in equipping the car with a smoke screen to avoid arrest in case of detection. The return to Washington with the whisky and the presence of the car in the alley were in furtherance of the plan, and the detection by the officer of the smoke screen and his announced and obvious intention to confiscate the car when he could obtain assistance were the direct cause of the shooting. It is hard to think of a more perfect concatenation of circumstances leading to a definite event. These related transactions were, therefore, admissible not only because of their intimate relation, but also because the commission of the offense in Baltimore, that is to say, the procuring of the whisky and the alleged bribery of the officers to permit escape, was relevant in showing the motive for the shooting when on the return to Washington confiscation of the automobile, detection, and arrest were imminent.

■ The numerous other grounds of error assigned related to the refusal of the court to reject evidence offered by one or the other of the defendants as they testified respectively, and to the rejection of prayers to charge the jury. It is enough to say as to the first that, notwithstanding the objections were not strongly urged in argument or stressed in the briefs, we have considered them carefully. The evidence objected to was altogether immaterial, and in no aspect could its admission have been prejudicial, and most of it was

304

really necessary to a proper elucidation of the inquiry and an understanding of the relevant facts, as well from the viewpoint of the defense as of the prosecution. At most, all of it was innocuous. As the Supreme Court said in Williamson v. U. S., 207 U. S. 425, 451, 28 S. Ct. 163, 172, 52 L. Ed. 278: "The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are especially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused."

██ As to Borum and Logan, in the light of their own evidence, there can be no reasonable doubt that nothing in the evidence objected to can be claimed to have wrought practical injustice to them in their trials. The evidence as a whole abundantly shows them guilty as charged. They were habitual criminals and lawbreakers, and there was ample evidence on which the jury could find that in cold blood they advanced on their victim when they realized they had been detected, and shot him to death. The fact that the actual shooting was done by Borum does not reduce the guilt of Logan. The jury could not possibly have reached any other conclusion than that the killing was premeditated, and there was ample proof on which to find that the premeditation was concurred in by both. The only eyewitness who testified, other than the defendants, said the two walked into the alley together, Logan in front and Borum immediately behind; that one of them asked the prohibition officer if he had a cigarette and, before he could answer, the other drew his pistol and, commanding him not to move, fired into his body; whereupon Logan entered his car and drove away, and Borum fled.

We have likewise examined the court's charge to the jury and find nothing there of which the defendants may properly complain.

██ The case of Guy, however, presents an entirely different aspect. While it is quite true, if we accept the statement of Borum, Guy aided in installing the smoke screen in the car, admittedly he took no part in the trip to Baltimore and had no relation to that enterprise other than an agreement to purchase a part of the liquor when the other two returned. Admittedly he was not a partner in the whisky adventure but was one of half a dozen prospective purchasers in the event the trip was successful. According to the undisputed evidence, he remained in his house in the lane until the return of the car, which was after deliveries had been made of most of the whisky at other places. The evidence adduced against him on behalf of the government tends to show that he remained in the alley from the time the officer arrived until after the shooting and most of the time near the officer and some of the time in conversation with him. There is nothing that we can find in any of the evidence, except in that of Borum, that in any way connects him with the return of Logan and Borum to the alley and with the shooting, while on the contrary the evidence on behalf of the government shows that he could not have had any contact with either from the time the officer came on the scene to the moment of the shooting, and the uncontradicted evidence clearly shows that when the fatal shot was fired, instead of attempting to escape, he went immediately to "get the law" and returned with a policeman and assisted in removing the body to the hospital. At the conclusion of the case for the government, there was absolutely no evidence to connect Guy with the crime. It is quite true that one of the government's witnesses stated that, while the officer was in the alley blowing the horn, he asked a white man who had driven in to go out and find a policeman for him and that Guy told the man not to, and if the charge on which he was tried had related to the transportation of liquor or the equipment of the car with the smoke screen, this would have been enough to connect him with the crime, but at that time the shooting had not occurred. Borum and Logan had not returned. Guy had remained in the alley and apparently had had no communication with them and therefore could not be presumed to have known their purpose, so that the evidence of the white man to whom the officer appealed as to the warning which Guy gave him not to assist in calling the police cannot be said to have had any relationship to the subsequent crime of murder. It is also quite true that the statement of Borum, which, as we have seen, was allowed to be read to the jury, directly connected Guy not only with the procurement of the pistol but with the actual shooting, but as this statement was made out of Guy's presence, it was, of course, inadmissible as to him and could not be made the basis of his conviction. In these circumstances, a directed verdict as to Guy would have been proper. In the subsequent proceedings, all three accused testified, and in his testimony Borum reiterated his previous statement that Guy did the shooting and that the pistol used was procured from Guy's

house by Guy for that purpose. Though the evidence of an accomplice, it was admissible and perhaps sufficient of itself to justify a conviction if the jury believed it. We think it proper to remark in passing that the court should, of its own motion, have cautioned the jury to weigh it carefully and not to give it too much reliance, but the failure of the court in this respect, in view of the decision of the Supreme Court in the Caminetti Case (Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168), will not permit us to reverse on this ground. We must, therefore, have resort to the evidence to determine if there is substantial testimony to prove the offense charged. If there is, we must affirm. If there is not, we should not hesitate to say so.

The most casual examination of Borum's evidence with relation to Guy shows that it could not have been true, either in respect to the shooting or the way in which the pistol was procured. The evidence for the government shows that Guy did not leave the alley after the officer arrived there, but remained most of the time close to and in conversation with him until the shooting. The man to whom the officer appealed to get assistance for him, and whose whole testimony indicates clearly that he was not seeking to protect Guy, says that Guy was in the alley when he (the witness) got there and also when he returned. The other government witness, as we have already shown, placed Guy in the alley for the whole time the witness was there, which covered the time from the blowing of the horn to the time of the killing. It is impossible to reconcile this evidence with that of Borum that Guy, Logan, and himself outside the alley and some distance away concerted together the plan to get the pistol and do the shooting. The pistol itself was found in Borum's house, and his statement that after Guy shot the officer he handed the pistol to Logan, who in turn handed it to him, is directly contradicted by the only eyewitness to the shooting, who said that as soon as the pistol was fired, Borum turned and ran down the alley and Logan drove his car away, while Guy sought immediately to find a policeman, and as soon as he had found one reported what had occurred. In our view this is not merely a case of contradictory testimony as to which it was the duty of the jury to winnow the true from the untrue. It was rather, in the light of all the circumstances which can be gleaned from a poorly compiled record, a plain case of obviously false testimony on which no man's life should be taken.

And since, as we think, Borum's testimony was a mere makeshift in his own defense, contradicted by the physical facts as well as the evidence of the only two disinterested witnesses, it becomes our duty to set aside the conviction as to Guy and award him a new trial.

Affirmed as to Borum and Logan. Reversed as to Guy, and remanded for a new trial to be had in conformity with this opinion.