## JOSEY v. UNITED STATES.
### No. 8416.

United States Court of Appeals for the District of Columbia.

Decided March 31, 1943.

Mr. Robert I. Miller, of Washington, D. C., with whom Mr. Joseph A. McMenamin of Washington, D. C., was on the brief, for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Cecil R. Heflin, Assistant United States Attorney, both of

Washington, D. C., were on the brief, for appellee.·

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant was convicted of assault with a dangerous weapon.[1] She testified that she and Virginia Boxley, the complaining witness, had been friends for years; that about four o'clock p. m., on October 31, 1942, she and the complaining witness got into an argument because the latter's little girl had called her names. About eight o'clock on the same date, the altercation was renewed when Virginia Boxley came running to her place and struck at her; when the Boxley woman hit her again she took a razor blade and "came down across her face"; that Virginia had something in her hand when she came at her; that she did not know what·she had in her hand; that she was pushed first but did not receive any injury; that she did not receive any injury at all. Dr. Clark, of Freedman's hospital, testified that he examined Virginia Boxley during the evening of October 31, 1942, at which time she had a serious cut across the face, which necessitated more than fifty stitches. The wound extended from back of the left ear, across the lower cheek, to the chin.

■■ On this appeal, the first question presented concerns the law of self-defense. It is contended that the trial court erred in permitting the District Attorney to ask appellant, on cross-examination: "If you believed the Boxley woman was going to do · you some harm, and you saw a knife in her hand, why didn't you run into the house to avoid trouble?" Appellant relies upon Brown v. United States,[2] in which the Supreme Court held, among other things, that if a person reasonably believes he is in immediate danger of death or grievous bodily harm from his assailant, he may stand his ground; and that, if, under such circumstances, he kills his assailant, he has not exceeded the bounds of lawful self-

defense. But the Supreme Court also said, in that case: "Rationally the failure to retreat is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing; * * *."[3] Appellant's argument assumes, improperly, that the two propositions are mutually exclusive. What the Court said was in rebuttal of the old doctrine that one must retreat "to the wall," whatever the circumstances may be, in order, successfully, to invoke self-defense.[4] It explained that such illustrations, stated in the early law, "have had a tendency to ossify into specific rules without much regard for reason."[5] But the Court did not by any means repudiate the requirement that one must reasonably believe he is in immediate danger of death or of grievous bodily harm, in order to justify a deadly assault in self-defense. What appellant believed, concerning Virginia Boxley's conduct, and how that belief affected her, was, consequently, of vital importance. The question, propounded by the District Attorney, was calculated to search for the nature and character of her belief, and was entirely proper to determine whether appellant went farther than she was justified in doing.

■■ Closely related, and again involving the law of self-defense, is appellant's assignment of error, based upon the court's refusal to give the following prayer: "That if the defendant had reasonable grounds to believe that the complaining witness was about to inflict violence upon her and was coming at her with a knife in her hand in a menacing manner, she was justified in defending herself and didn't have to retreat." This prayer was fatally defective. One of the determining elements in self-defense is the belief of the accused, concerning the imminence of danger. While it is necessary, therefore, that he have *reasonable grounds to believe,* it is necessary, also, that his mind react to those grounds, to the extent of believing both that danger is imminent, and that force must be used to repel it.[6] Consequently, there was

---

[1] D.C.Code 1940, § 22—502: "Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than ten years."

[2] 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 18 A.L.R. 1276.

[3] Ibid.

[4] Ibid. See also Beard v. United States, 158 U.S. 550, 560, 15 S.Ct. 962, 967, 39 L.Ed. 1086.

[5] Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 18 A.L.R. 1276.

[6] Andersen v. United States, 170 U.S. 481, 508, 18 S.Ct. 689, 42 L.Ed. 1116.

no error in refusing to give the offered prayer. But there was another reason, equally good, for denying the prayer; namely, that the law relating to self-defense was adequately covered in the instructions which the trial court gave.[7] Appellant's objections thereto are without merit.[8]

■ During his argument to the jury, the District Attorney stated: "From the testimony of the doctor, the wound was a serious one and if it had been an inch lower the defendant might be here for murder." This was permissible argument upon the question whether the weapon used was a dangerous one and whether it was likely to produce death or great bodily injury.[9] The circumstances of Berger v. United States,[10] upon which appellant relies, do not resemble those of the present case in any way.

■ Appellant called two character witnesses, who testified as to her good reputation for peace and good order and for truth and veracity. On cross examination the District Attorney was permitted to ask these witnesses, over objection, if they had heard that the defendant had been arrested in 1940 for disorderly conduct. The prosecution may not initially attack the defendant's character.[11] After a defendant has attempted to show his good character in his own aid, however, the prosecution may, in rebuttal, offer evidence of his bad character.[12] While evidence of good or bad character is restricted to general reputation, and does not extend to particulars, a witness to good character may be asked, on cross-examination, whether he has heard particular and specific charges, or rumors, against an accused, of acts inconsistent with the trait of character about which the witness has testified.[13]

We have carefully examined all appellant's contentions and find them without merit.

Affirmed.

[7] Hodge v. United States, 75 U.S.App. D.C. 332, 126 F.2d 849.

[8] See Hopkins v. United States, 4 App. D.C. 430, 443; Price v. United States, 51 App.D.C. 106, 108, 276 F. 628; Sacrini v. United States, 38 App.D.C. 371, 378; Kinard v. United States, 68 App.D.C. 250, 254, 96 F.2d 522, 526; Wallace v. United States, 162 U.S. 466, 471, 16 S.Ct. 859, 40 L.Ed. 1039; Gourko v. United States, 153 U.S. 183, 191, 14 S.Ct. 806, 38 L.Ed. 680; Beard v. United States, 158 U.S. 550, 564, 15 S.Ct. 962, 39 L.Ed. 1086; Rowe v. United States, 164 U.S. 546, 558, 17 S.Ct. 172, 41 L.Ed. 547; Andersen v. United States, 170 U.S. 481, 508, 18 S.Ct. 689, 42 L.Ed. 1116; Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961, 18 A.L.R. 1276.

[9] Tatum v. United States, 71 App.D.C. 393, 110 F.2d 555, and authorities there cited; Hopkins v. United States, 4 App. D.C. 430, 442: "The best evidence of its dangerous character, and of what it was capable of doing, was the injury actually inflicted by it."

[10] 295 U.S. 78, 84–89, 55 S.Ct. 629, 79 L.Ed. 1314.

[11] 1 Wigmore, Evidence (3d ed. 1940) § 57, p. 456: "The rule, then, firmly and universally established in policy and tradition, is that the prosecution may not initially attack the defendant's character." Davila v. United States, 1 Cir., 54 F.2d 356; Mansbach v. United States, 3 Cir., 11 F.2d 221; Mercer v. United States, 3 Cir., 14 F.2d 281.

[12] Borum v. United States, 61 App.D. C. 4, 56 F.2d 301, cert. denied sub nom. Logan v. United States, 285 U.S. 555, 52 S.Ct. 459, 76 L.Ed. 944; 1 Wigmore, Evidence (3d ed. 1940) § 58.

[13] Stewart v. United States, 70 App.D. C. 101, 104 F.2d 234; Clark v. United States, 57 App.D.C. 335, 23 F.2d 756; Jung Quey v. United States, 9 Cir., 222 F. 766, 771; Spalitto v. United States, 8 Cir., 39 F.2d 782; 3 Wigmore, Evidence (3d ed. 1940) § 988.